## STADLER et al. v. MISSOURI RIVER POWER CO.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1905.)

### No. 1,155.

**1. DEEDS—RESERVATION—CONSTRUCTION.**

In the absence of a clearly expressed intention to contract for other rights, a reservation from a grant by deed or lease is limited to some part of the estate owned by the grantor, and which would otherwise pass by the grant.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 465.]

**2. WATER COURSES—COVENANT FOR EASEMENT TO FLOOD LANDS—CONSTRUCTION.**

Defendant owned a dam on the Missouri river, used for generating electrical power, and instituted condemnation proceedings against lands of plaintiffs lying above. After judgment defendant bought the land condemned, together with an additional tract from plaintiffs' ranch, at the same time executing a lease of the same to plaintiffs for 20 years at a rental of $1 per year, in which the right to flood the land leased was reserved, and it was provided that plaintiffs "hereby agree to permit and recognize the right of said first party to flood said premises by the waters of the Missouri River as they may be raised by the dam belonging to said first party * * * as the said dam now exists, or as the same may be hereafter raised or lowered, without claim for damage." Sufficient consideration for the lease appeared in addition to the nominal rental. *Held*, that such provision extended no further than the reservation, and did not release defendant from damages for flooding other lands owned by plaintiffs, not described or mentioned.

Appeal from the Circuit Court of the United States for the District of Montana.

For opinion below, see 133 Fed. 314.

The Helena Water & Electric Power Company, hereinafter designated the "Helena Water Company," the predecessor of the appellee herein, had constructed and was maintaining a dam across the Missouri river in Lewis and Clarke county, Mont. On the bank of the river about eight miles above the dam the appellants owned and were operating a cattle ranch, consisting principally of low and comparatively level grazing and hay lands. The Helena Water Company wished to raise its dam, and, finding that it would thereby flood some of the lands of the appellants, on December 16, 1897, it commenced, in the district court of the First Judicial District of Montana for Lewis and Clarke county, against the appellants, a suit to condemn a body of land, being the lower portion of the appellants' ranch, and consisting of 393 acres. Those proceedings resulted in a judgment rendered upon the verdict of a jury on June 29, 1898, whereby the value of the lands so sought to be condemned was fixed at $35 per acre, and in addition thereto the sum of $2,700 was awarded the appellants as damages to their other lands by reason of their severance from the lands condemned. After that judgment was rendered, and in September, 1898, in view of the loss of the condemned land, the appellants bought the adjoining ranch of their next neighbor up the river. About this time the Helena Water Company, finding that by raising its dam as contemplated it would flood more of the appellants' land than had been anticipated, entered into negotiations with the appellants for the purchase of other lands above the lands condemned. These negotiations resulted in a conveyance, on January 17, 1899, whereby, in consideration of $22,487.55, the appellants conveyed to said company not only the land so condemned, but in addition thereto 243.57 acres lying next above it, the total quantity of land so conveyed being 637.42 acres. At the same time with the execution of the conveyance, and as a part of the same transaction, the company executed to the appellants a lease of all

the lands which had been so conveyed to it, which lease is as follows: "This indenture, made the seventeenth day of January, 1899, between the Helena Water and Electric Power Company, a corporation, by C. W. Whitley, its general manager thereto duly authorized, party of the first part, and Louis Stadler and Louis Kaufman of Lewis and Clarke county, Montana, parties of the second part witnesseth: That in consideration of the rents hereinafter reserved and the covenants hereinafter contained on the part of the said Louis Stadler and Louis Kaufman, their executors, administrators, and assigns, to be observed and performed, the said Helena Water and Electric Power Company does hereby let and rent unto the said parties of the second part for the term of twenty years, except as hereinafter stated and limited, the following described premises. [Here follows a description of the premises leased.] Also, such other land as the party of the first part now owns on the island in the Missouri River near the above-mentioned property, reserving, however, to the said party of the first part, its successors and assigns, the right at all times hereinafter to flood any or all of said premises by the waters of the Missouri River as the same may be raised by the dam belonging to the said first party at Canyon Ferry, Lewis and Clarke county, Montana, as the same now is or the same may be hereafter raised or lowered and this lease is given subject to this right. In consideration whereof, the said parties of the second part agree to pay unto the said party of the first part the yearly rent of one dollar for the use of said premises, payable on the 17th day of January, 1900, and every year thereafter during the continuance of this lease. And said second parties for themselves and each of themselves, their and each of their heirs, executors and assigns, do hereby agree to permit and recognize the right of said first party to flood said premises by the waters of the Missouri River as they may be raised by the dam belonging to the said first party at said Canyon Ferry, Montana, as the said dam now exists or as the same may be hereafter raised or lowered, without claim for damage. It is hereby mutually agreed and understood that if at any time hereafter the dam of the said party of the first part at said Canyon Ferry as it now exists or as it may hereafter be altered or changed shall be washed away so that it does not afford sufficient power to the said first party, that this lease shall then and there terminate." At the same time a third instrument, called a "release," was executed, in words as follows: "Know all men by these presents, that we, Louis Stadler and Mary Stadler, his wife, and Louis Kaufman, for and in consideration of the sum of one dollar, and other valuable consideration to us in hand paid by the Helena Water and Electric Power Company, a corporation, have forever released and discharged, and do hereby forever release and discharge the said Helena Water and Electric Power Company, its successors and assigns, from all damages or claim for damages which we have or claim to have, or may hereafter claim, against it by reason of it (said company) having flooded or hereafter flooding by the waters of the Missouri River the following described real estate, or any thereof, to wit. [Here follows description of the premises, being the same premises as those described in the deed and the lease.] All in the county of Lewis and Clarke, and State of Montana; also the land on the island in the Missouri River near said above-mentioned property." The Helena Water Company then raised its dam, and thereby backed water over portions of all the land so deeded to it by the conveyance above mentioned, and the same was maintained until August, 1902, when the appellee, as its successor in interest, raised the dam still higher, and thereby flooded large portions of other lands of the appellants, not conveyed to the water company, lying above the lands so conveyed, consisting of 289.49 acres, on which the appellants owned a dwelling house, sheds for cattle, a granary, corrals, and branding chutes.. It was to enjoin the flooding of these lands above the deeded lands that the present suit was brought. On the issues presented testimony was taken before an examiner, and on the final hearing a decree was entered dismissing the appellants' bill.

T. J. Walsh, for appellants.

E. W. Toole, B. P. Carpenter, T. C. Bach, E. C. Day, and Stephen Carpenter, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, delivered the opinion of the court, after stating the case as above.

The rights of the parties in the present litigation depend on the construction of the lease and the release executed on January 17, 1889. Those instruments, as was also the deed of the same date, were prepared by the attorney of the Helena Water Company. Before they were executed there was inserted by the said company at its own instance, by interlineation, in the lease the following clause: "Also such other land as the party of the first part now owns on the island in the Missouri River near the above-mentioned property," and in the release the following: "Also the land on the island in the Missouri River near said above-mentioned property." What land was meant by these terms in these instruments is, as we shall presently see, the subject of much controversy, both in the testimony and in the argument of counsel. In the lease the appellee leases to the appellants for the term of 20 years all of the lands that had just been conveyed to it by the latter, the intention evidently being to permit the appellants to use for pasturage or hay cutting in connection with their cattle ranch such portions of the same as would not be flooded by the waters of the dam. In that instrument the right of the appellee to flood the leased lands is expressly reserved. The appellee contends, and the trial court so held, that the words of the reservation, together with the answering covenant of the lessees and the terms of the release, constitute a contract between the parties by which the appellee was given the right to raise its dam to any height, and that the flooding of other lands which the appellants owned was a necessary incident to such right was in the contemplation of the parties, and passed to the appellee by those instruments.

The first question, then, is, what was reserved to the Helena Water Company by the lease? The extent of that reservation, whatever it is, is not enlarged by the answering covenant of the lessees in the lease. That covenant recognizes the reservation. It repeats its language word for word, with the exception of the final words, "without claim for damage." Those words are unimportant, and are merely surplusage. They mean no more than that the lessor in the lease may exercise the rights reserved therein without claim for damage on the part of the lessees. A reservation has been defined to be an interest retained by a grantor out of the body of the thing granted. Marshall v. Trumbull, 28 Conn. 183, 73 Am. Dec. 667. Another definition is, "A clause in a deed whereby the grantor reserves some new thing to himself issuing out of the thing granted and not in esse before." 4 Kent's Com. 468. In Winston v. Johnson, 42 Minn. 398, 45 N. W. 958, the court defined a reservation as "something merely created or reserved out of the thing granted that was not in existence before." In Craig v. Wells, 11 N. Y. 315, the court said: "A reservation is always something which is taken back out of that which is clearly granted." In Barataria v. Ott (Miss.) 37 South. 121, the court said: "A reservation in a deed must not only be, as hereinbefore pointed out, of something which would otherwise, by operation of the terms of the

deed, be conveyed, but it must necessarily be of something which belongs to the grantor at and before the execution of the deed. Property cannot be conveyed by reservation." Judge Gray held, in Hill v. Cutting, 107 Mass. 596, that one of two tenants in common, who quitclaimed to his co-tenant all his interest in a certain described portion of the common property, reserving to himself the right to all the timber growing on a certain described eight-acre tract thereof, reserved thereby only his own undivided one-half of said timber, and did not acquire the undivided one-half interest of his co-tenant therein. The court said, "A reservation or exception can only be out of the estate granted." These definitions and utterances of the court express the general meaning and scope of a reservation in a deed or other instrument. It has been held, however, and it is conceded to be the law, that where an intention is clearly expressed in what is denominated a reservation that the grantor is to exercise some right outside of and above the rights which he had in the thing granted before the grant was made, and the grantee assents thereto, such an agreement, although expressed in the form of a reservation, may have the force and effect of a contract, if such is clearly the intent and purpose of the contracting parties. Case v. Haight, 3 Wend. 632. But are we justified in saying that such was the intention of the contracting parties to the lease under consideration? It is a rule of construction that the words of a reservation will be construed most strictly against the grantor and most beneficially for the grantee. St. Anthony Falls W. P. Co. v. Minneapolis (Minn.) 43 N. W. 56; Brown v. Darling .et al. (Ky.) 52 S. W. 936; Bolio v. Marvin, 130 Mich. 82, 89 N. W. 563; Wellman v. Churchill, 92 Me. 193, 42 Atl. 352; The Green Bay and Mississippi Canal Co. v. Hewitt et al., 66 Wis. 461, 29 N. W. 237. In determining the meaning of the words used, if they are ambiguous it is proper to consider the antecedent and attending circumstances. Dunn v. English, 23 N. J. Law, 128; Lego v. Medley et al. (Wis.) 48 N. W. 375, 24 Am. St. Rep. 706; Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; French v. Williams (Va.) 4 S. E. 591.

The first step of the Helena Water Company in the proceedings which led up to the execution of these instruments was its condemnation suit, whereby it sought to condemn the lower portion of the appellants' ranch. Up to the time of that suit evidently the water company expected to flood no more of the appellants' land than that described in its complaint therein. The judgment in that suit gave it no right to flood any other lands. Afterward, finding that it needed to flood still other lands of the appellants, it bought such other lands, together with the condemned lands, all at the price per acre that had been fixed by the verdict of the jury in the condemnation suit. The conveyance then made, if it had stood alone, would have measured the full extent of the appellee's right to flood the lands of the appellants. But the settlement contemplated other things. The appellants wished to obtain a lease on the deeded lands, so that they might avail themselves of the hay and pasture lands thereof on such portions as might not be flooded, and the

Helena Water Company wished to obtain a release of the judgment of $2,700 which stood against it, damages for the severance of the condemned lands from other lands, and also a release from damages for flooding the appellants' lands pending the condemnation proceedings and up to the time of the settlement. In the lease the reservation of the right to flood goes no further, by its expressed terms, than the lands belonging to the Helena Water Company. It is the right to flood the particular lands which it owned, only, that is thus reserved. If it had been the intention of both the parties to that instrument that other lands might be flooded, it is reasonable to assume that that intention would have been expressed in words. It is true the lease reserves the right to raise the dam as the same was then or might thereafter be raised or lowered, but the right to raise and lower the dam must be limited by the reserved right to flood, and the words used mean no more than that the water company was at liberty to raise the dam to any height it might deem necessary to flood the lands which it owned, and which it had reserved the right to flood. In other words, the lease, as we construe it, reserves to the water company the right to flood the lands described in the lease, and to that extent, and to that extent only, to raise its dam to any desired height.

It is contended that, if this construction of the instrument be adopted, no consideration is left to be apportioned for the lease which was given to the appellants. It is true that the consideration in both the lease and release is therein said to be $1, and that the consideration expressed in the conveyance amounts to $35 per acre for all the land conveyed. But the fact must not be lost sight of that in the condemnation proceedings $2,700 had been awarded to the appellants as damages for the severance of the lands condemned from their other lands, and that award stood in the form of a judgment against the water company at the time when the instruments were executed. While the conveyance to the water company of those other lands so severed may be said to have extinguished that particular claim for damages, there can be no question but that still further claims of the same nature might arise for the severance of the lands conveyed from those still reserved by the appellants, and on which are situated their improvements. In addition to this, it appears that pending the condemnation suit there had been flooding of appellants' lands above the lands condemned, which flooding formed the basis of a claim of damages. The relinquishment of those claims for damages may well have been taken into the reckoning, and have been an adequate consideration both for the lease and the release. The very fact that the lease was taken, as it was, for a period of 20 years, shows that it was within the contemplation of both the parties thereto that a considerable portion of the land conveyed to the water company was to be available to the appellants for purposes of pasture or for cutting hay, and it cannot be doubted that the right to use those lands so secured to the appellants by the lease was supposed by the parties thereto to be a valuable right. When the words of a grant are ambiguous, the courts will also consider the acts done under it

as a clue to the intention of the parties. Livingston v. Ten Broeck, 16 Johns. 22, 8 Am. Dec. 287; French v. Carhart, 1 N. Y. 96. It is a circumstance to be considered in this connection that immediately upon the execution of the instruments the dam was raised so as to flood considerable portions of the leased lands, but not the lands of the appellants lying above the same, and was so maintained for 3½ years, and until August, 1902, when it was raised to its present height. It is not disputed that when it was so raised the appellant Kaufman went to Mr. Gerry, then and since the organization of the appellee, its chief engineer and manager, and told him "that they were drowning us out," and that "Mr. Gerry said that there was no doubt about it; that the Missouri River Power Company would have to settle with us for it." But it is said that the release gave to the Helena Water Company the right to flood all the lands the appellants then owned, and this for the reason that it expressly recognized that company's right to flood the land on the island in the Missouri river. To one who examines the lease and the release without the aid of extraneous evidence, it must seem clear that the island land referred to in both is the same land—that is, that it is some land then belonging to the water company on an island in the Missouri river. Both clauses so interlined were inserted at the same time, and their language is the same, with the exception that in the release the words "as the party of the first part now owns" are omitted. The appellants contend that the island so referred to is a small island in the Missouri river opposite the lands which were the subject of the condemnation suit. The appellee contends, and it produced testimony to show, that the island referred to in both instruments is land in the Missouri river lying above the deeded lands consisting of lots 12, 13, and 14 in section 5, lots 2, 3, 4, and the N. ½ of the N. W. ¼ of section 8, lot 7 in section 7, and lot 17 in section 6, and that it is called an island for the reason that low ground in the shape of a channel separates it from the other land, in which channel in times of freshet water enters from the river so as to create a slough and form with the Missouri river an island; and that the island land belonging to the Helena Water Company referred to in the lease is lots 12 and 13 of section 5 and lot 2 of section 8, containing in all 65 acres; and that it is in the lease described as land which "the party of the first part now owns" for the reason that by virtue of the act of Congress which gave that company the authority to construct its dam across the Missouri river there was granted an implied right to flood lands belonging to the United States; that said lots were then and remain the property of the United States; that the "land on the island in the Missouri river" mentioned in the release is the remainder of said lands, the property of the appellants; and that the clause was interlined in the release for the reason that the water company wished to obtain a discharge of all claim of future damages for flooding any or all of the lands which the appellants still owned after the execution of the deed. One difficulty in the way of this explanation is the fact that the appellants at that time owned other lands not mentioned in the release, lands adjoining the so-called

slough, and similarly situated to the lands called by the appellee the island lands, consisting of some 140 acres, which has been flooded by the present dam, according to the testimony, nearly, if not quite, as extensively as the island lands. If it was the intention of the parties to the release to acquit the appellee of all claim of damages for flooding other lands of the appellants, it is not apparent, nor is it explained, why these other lands were not mentioned in the release. Another difficulty is that it is not perceivable how the appellee's predecessor could with propriety denominate in the lease the public land, in which it claimed no greater interest than the right to flood the same from the act of Congress authorizing it to dam the Missouri river, "land which the party of the first part now owns," or could assume to lease the same to the appellants. And there is also the additional fact that the appellants never asked for or discussed a lease of those lands. The testimony as to the circumstances under which the interlineations were made is meager. It is admitted that the lease and the release had been prepared for some time before they were signed; that they were prepared by the attorney for the Helena Water Company, but that thereafter, and just before they were signed, these interlineations were made. There is no dispute that they were made at the suggestion of Mr. Whitley, then the manager of the Helena Water Company. He testified that the interlineations were made to carry out the understanding of the parties, and that in the negotiations he distinctly remembered having stated to Mr. Kaufman, one of the appellants, "that at periods of low water we would undoubtedly resort to flashing, and that at that time the flashing would undoubtedly bring the level of the water to a height the same as flood heights in the spring"; but he also testified that he never had any specific conversation with either of the appellants in relation to lands upon the so-called island. One of the appellants testified that nothing had been said in the negotiations about flooding lands other than those which were deeded, and that little attention was paid by the appellants to the matter interlined for the reason that they understood the island referred to to be a small island in the Missouri river further down the stream, and opposite the lands which were the subject of the condemnation suit. He testified that Mr. Whitley said it "would be better to have that in there. I told him we would not come down and claim this island. I said, 'What do you want this island described for?' He said, 'It is better to have it there.'" The witness stated that he paid little attention to what the language meant.

If we assume that both parties testified truly as to their understanding concerning the land on the island, it is evident that they had in contemplation not the same, but different, lands. However that may be, we are convinced, upon a consideration of the whole of the evidence, that the minds of the contracting parties never met upon the proposition that the Helena Water Company was to exercise the right to flood the whole of the appellants' ranch, and never expressed such an understanding in their contracts. The papers had been prepared for execution several days before they were

signed. Presumably, as thus prepared, they expressed the agreement of the parties. They had been submitted to the attorney of the appellants, and approved by him. It is not conceivable that the appellants intended by the interlineations thereafter made just before the execution of the lease and the release to change the whole scope and tenor of their contract; or that they ever intended, as the consideration for the lease which they obtained, not only to relinquish all their claim for damages then accrued, but to submit the whole of their remaining land to the use of the Helena Water Company, and to grant it the right to flood the same to any desired depth. And such would clearly be the right of the appellee if its contention as to the construction of the papers were correct. We are of the opinion that neither in the lease nor in the release is the right given to the appellee to flood any of the appellants' lands.

The decree will be reversed, and the cause remanded for further proceedings not inconsistent with this view of the contract.