JOSEPH MATOUSEK, APPELLANT, v. JOHN F. GALLIGAN, APPELLEE.

FILED JUNE 19, 1920.    No. 21042.

1. **Sales**: CONTRACT: NONPERFORMANCE: ACT OF GOD. Where defendant is prevented from performing his contract to deliver specific hay by storms and unusual rains, constituting an act of God, he is not liable for nonperformance.

2. ———: INSTRUCTIONS. The instructions of the trial court were proper, and we find no prejudicial error in them.

3. Evidence examined, and *held* sufficient to sustain the verdict of the jury.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*Edward H. Whelan,* for appellant.

*J. J. Harrington, contra.*

ALDRICH, J.

This is an action upon a written contract of sale. Judgment below was for defendant. Plaintiff appeals.

On April 5, 1917, the parties entered into the following written contract: "April 5, 1917. This is an acknowledgment of $150 payment on about 60 tons of hay at $9,25 per ton delivered in barn or cars at Atkinson, Neb., good No. 1 merchantable hay to be delivered on or before May 10, said hay sold to Joseph Matousek.

"J. F. Galligan,<br>"Joseph Matousek."

Plaintiff alleged that by mutual agreement the time of delivery under the contract was extended to the 16th of June, 1917, on which day defendant finally told plaintiff that he would not deliver the hay at all; that, by reason of defendant's failure to deliver the hay as agreed, the plaintiff, by reason of the great increase in the price of hay of that kind and quality, suffered a loss of $9.75 a ton on all the hay mentioned in the contract, or a total loss of $585, which sum, together with the sum of $150 already paid, amounts to $735.

Defendant in his answer admitted that he entered into the contract set forth in plaintiff's petition, and admitted that he received $150 from plaintiff, and also that he had not delivered the hay or any part of it. Defendant further claimed that the hay was situated on land seven miles south of Atkinson, which fact was well known by defendant at the time they made the contract, and that almost immediately after the contract

was made there came frequent and unusual storms and rainfall, making it impossible to bale and deliver No. 1, merchantable hay. He claims performance was prevented by an act of God.

On the question of act of God the court submitted the following instruction: "You are instructed that an 'act of God' is a part of every contract, whether it is written therein or not, and if a party is prevented from performing his contract directly and exclusively by an act of God, the law excuses him, and he cannot be held for any injury or damage in the nonperformance of the contract. An act of God, such as will excuse the performance of a legal contract, must be an act or occurrence so extraordinary and unprecedented that human foresight could not foresee or guard against it, and the effect of which could not be prevented or avoided by the exercise of reasonable prudence, diligence and care, or by the use of those means which the situation of the party renders it reasonable that he should employ. It must be the sole proximate cause of the nonperformance, without the participation of man, whether by active intervention or negligence or failure to act. The burden of proving this defense by a preponderance of the evidence is upon the defendant." We think this instruction states the law in regard to the act of God under the evidence. The jury were justified in finding that the act of God excused him from performance of the contract. The instruction fairly submitted the question.

It was reasonable for the jury to believe the testimony of defendant's witnesses with reference to the condition of the weather, the roads and the meadows. There was some evidence to the effect that a hay baler could not be hauled from one place to another on the roads or in the hay meadow. Defendant did not own a baler, and had to hire the hay baled. According to defendant's witnesses, the hay was short, the stacks small and wet through. Defendant claimed, and several

Matousek v. Galligan.

witnesses supported him, that the hay was wet and could not be baled and delivered as No. 1, merchantable hay. The record discloses that No. 1 hay must be dry.

The evidence also shows that this hay in question was practically a total loss, as defendant gave some of it away and sold a carload for $24, which would be something like $3 a ton.

The defendant denied that there was ever any extension of the time for delivery under the contract, and this issue was submitted to the jury in the instructions of the trial court.

On the question of defendant's inability to deliver this hay by reason of the continual and heavy rains there is a conflict of evidence. The jury found for the defendant. Also on the question whether defendant and plaintiff contracted for this hay with reference to specific hay situated on the land of defendant, there is a conflict in the evidence, but the jury found in favor of defendant. Defendant claims that plaintiff bought specific hay, that is, hay located on his land and which hay he bought from his landlord. Counsel for defendant admits that defendant would be liable if the parties did not contract with reference to specific hay.

The jury based its verdict on conflicting evidence in favor of defendant and against plaintiff. Under the rule we will not disturb the verdict unless clearly wrong. The record discloses that there is sufficient evidence to sustain the finding of the jury, and there was no error in the instructions of the court. They fairly submitted the issues, giving each side the benefit of its own particular theory of the case. We are obliged, then, as a matter of law to affirm the decision of the trial court.

AFFIRMED.

LETTON and ROSE, JJ., not sitting.