St. Anthony Falls Water-Power Company *vs.* City of Minne-
apolis.

July 17, 1889.

Riparian Owner—Grant of Land not Abutting on Stream, with Right
to Draw Water.—A riparian owner may grant a part of his estate, not
abutting on the stream, and as appurtenant thereto a right to draw water
from his remaining land; and for any diversion of
the natural flow of the stream disturbing such right the grantee may
maintain an action.

Deed of Land with Enumerated Appurtenances — Construction of
Restrictive Clause.—Where a deed conveys land, and as appurtenant
thereto certain enumerated rights, privileges, and easements, but further
provides that no rights, privileges, easements, or appurtenances shall
pass by intendment or implication, the restrictive clause must be con-
strued as merely excluding a grant by implication or intendment of any
principal easements in grantor's land, but as not excluding those ancillary
or secondary easements or rights which are necessary to the enjoyment
of the rights or easements expressly granted.

Same — Grant of Mill-Site — Implied Grant of Right to Maintain
Pond.—On this principle, a deed of land as a mill-site, with the right as
appurtenant thereto of constructing a canal through the grantor's land,
and of drawing water from a pond for the use of a mill on the land con-
veyed, *held* to grant by implication the right to maintain the pond, not-
withstanding the restrictive clause in the deed.

Same—Construction of Reservation.—While a reservation in a deed in
favor of the grantor is to be construed more strictly than a grant, yet
such a reservation will include the use of such means as are indispensa-
bly necessary to the exercise of the right reserved. Under the facts of
this case the reservation in the "Kingsley" deed to flow the granted land
to a certain point, *held* to include the right to maintain a wing-dam nec-
essary to flow to the designated point.

Prescription—Right to Maintain Dam.—*Held*, *also*, that upon the find-
ings of fact no right to maintain this dam above that point has been ac-
quired by prescription.

Grant of Water-Power—Quantity.—*Also* that, upon the facts, the water-
power which the defendant is entitled to is what it would have (not ex-
ceeding the amount granted in the "Farnham & Lovejoy" deed) with the

wing-dam maintained to the extent authorized by the reservation in the Kingsley deed with the natural flow of the water into the pond uninterrupted by plaintiff's dam.

**Same—Remedy for Interference.**—That plaintiff's dam, preventing such flow into the pond, is an unlawful interference with defendant's rights, but that defendant has no right to require the removal of the dam, provided plaintiff furnishes to it through a sluiceway the amount of power to which it is entitled.

Plaintiff brought this action in the district court for Hennepin county, to restrain the defendant from destroying or removing any part of plaintiff's dams in the Mississippi river (described in the opinion) or from interfering with or disturbing the flow of water of the river to the mills and machinery of plaintiff's grantees. The defendant in its answer pleaded, among other things, the rights acquired by it under the deed of April 11, 1865, from Farnham & Lovejoy to Cutter and others, mentioned in the opinion, and prayed an injunction restraining plaintiff from interfering with such rights, and that, if necessary to preserve and protect such rights of defendant, the court order the removal of plaintiff's dam. The reply put in issue the rights claimed in the answer. The action was tried by *Young*, J., whose order for judgment for defendant is stated in the opinion. The plaintiff appeals from an order refusing a new trial.

*Benton & Roberts* and *E. M. Wilson*, for appellant.

*Robert D. Russell*, for respondent.

MITCHELL, J. The rights of the parties depend almost entirely upon the effect of the deed of April 11, 1865, from Farnham & Lovejoy to Cutter, Secombe & Carpenter. To aid in the construction of this deed, and to understand the purpose of the grant, it is proper to refer to the character and condition of the premises at the time. Hennepin island, in the Mississippi river, immediately above St. Anthony Falls, derived its principal if not its only value from the water-power appurtenant. Kingsley, the original proprietor of the whole island, first conveyed to plaintiff's remote grantors all of the island except the south-west quarter, reserving, however, the right to flow and reflow so much of the western shore up to a designated point (some 130 or 140 feet below the head of the island) as

might be necessary to the full and perfect enjoyment of the water-power on the western shore of the island. He subsequently conveyed the south-west quarter of the island to the remote grantors of Farnham & Lovejoy, appurtenant to which, also, passed the right of flow and reflow reserved in Kingsley's first deed. In 1865 Farnham & Lovejoy were the owners of this south-west quarter, with all the rights and easements appurtenant thereto. They also had certain rights under what was known as the "Brott lease;" but, as this has long since expired, it is not now important. The water-power on the premises had already been improved by creating a pond on the west side of the island by the construction of a dam extending out from the shore into the river, a distance of about 75 feet, and thence up the river, as a wing-dam, a distance of some 700 feet, to what was known as the "Government Pier," which was about 200 feet below the point to which the right of flow and reflow, reserved in the first "Kingsley" deed, extended. The effect of this was to hold the water which flowed down on that side of the island upon a rock ledge along its west shore, which was much higher than the bed of the river adjacent. From the topography of the surroundings it is evident that the formation of this pond by the construction of this dam was the only practicable mode of creating a water-power; for otherwise the water would spill over the side of the ledge and run into the middle of the river. At this time there was at the lower end of this pond a saw-mill, the machinery of which was run by water drawn from the pond, the elevation of which above the river below the falls furnished the head. Adjoining the saw-mill, and east of it, was a stone building, used as a sash and door factory, which was run by power from the water-wheels of the saw-mill.

Such was the situation when, in April, 1865, Farnham & Lovejoy, by the deed referred to, conveyed to Cutter, Secombe & Carpenter (defendant's grantors) the land upon which the sash and door factory stood, and a piece of land adjoining it on the north; *but none of the land thus conveyed in fee bordered upon the river*. This deed, in addition to the grant of this land in fee, also granted and conveyed to Cutter, Secombe & Carpenter, their heirs and assigns, "the rights, privileges, and easements hereinafter specifically set forth and enu-

merated, (in subdivisions 1 to 8 inclusive, of the deed,) and which are hereby made appurtenant to the lands above described; *and no rights, privileges, easements, nor appurtenances not so hereinafter set forth shall pass by this indenture by any intendment or implication.* \* \* \* To have and to hold the above-described lands in fee-simple, with all the rights, privileges, easements, and appurtenances hereinbefore specially set forth, and *none others,* unto the parties of the second part," etc. Upon the execution of this deed Cutter, Secombe & Carpenter took possession, constructed the canal, and put into the building machinery, together with water-wheels supplied with water for power drawn from the mill-pond. The property and water-power has been thus used by them or their grantees ever since. The wing-dam was maintained as it then existed until 1875, when it was extended up to a point opposite the angle in plaintiff's dam, (a distance of some 440 feet,) with which it was afterwards connected. This extension of the wing-dam was rendered necessary by the recession of the falls. Both parties (Farnham & Lovejoy and Cutter, Secombe & Carpenter) shared in the expense of maintaining the dam. In February, 1882, Farnham & Lovejoy sold out to plaintiff, which thereby became the owner of the whole island, except what was owned by Cutter, Secombe & Carpenter.

It is contended that, as the city owns no land abutting on the river, it is not a riparian owner, and hence has no riparian rights. This is a mere question of names or definitions, which is of no legal significance whatever in the case. It is entirely immaterial whether the defendant's rights are riparian or conventional. It has rights for the disturbance of which it has a right of action. It is unimportant whether it be held that the provision in the Farnham & Lovejoy deed in regard to the canal amounted to a division of the stream into two courses, which rendered Cutter, Secombe & Carpenter riparian owners as respects the canal, or—what seems to us more in accordance with principle and common sense—that a riparian owner may grant a part of his estate, not abutting on the stream, and, as appurtenant thereto, a right to draw water from the stream through his land. In either case the result is the same. Cutter, Secombe & Carpenter were grantees of rights which Farnham & Lovejoy had the right to

transfer, and which the former had the right to enjoy. *Nuttall* v. *Bracewell*, L. R. 2 Exch., 1; *City of Reading* v. *Althouse*, 93 Pa. St. 400; *Matteson* v. *Wilbur*, 11 R. I. 545.

The only question, therefore, is, what rights were in fact granted by this deed? The general rule is that a grantee of land or of an easement in land is entitled by implied grant to any easement in the land of the grantor which is necessary to render the land or the easement granted capable of enjoyment,—that a grant carries with it all things, as included in it, without which the thing granted cannot be enjoyed. This rule depends upon the principle that where a grant is made it must have been the intention of the parties that the grantee should have the means of using the thing granted. As the right to maintain this dam is necessary to hold the water in this pond, and hence necessary to the enjoyment by the grantees of the right to draw water from it, it is conceded that the situation of the subject-matter of the deed was such as would, in the absence of any restrictive clause, imply a grant of the right to maintain the dam. But it is contended that, as no such grant is expressed in the deed, it could not pass by implication or intendment, because these are expressly cut off; and that it cannot be assumed as an appurtenance to the thing granted, because it is not specifically enumerated. According to this construction of the deed, not only had the grantees no right to repair or maintain the dam, but the grantors might have removed it the next day and thus deprived the grantees of all water-power, and rendered their property useless. Under such a view it would be difficult to imagine a more barren and worthless grant than that of the right to construct a canal and to draw water from the pond; for without the dam there would be no pond, and consequently no water to draw. A construction of the deed that would render the grant so comparatively nugatory should not be adopted unless the language is such as to admit of no other reasonable construction. So far from this being the case, the deed bristles all over with provisions indicating that the parties intended and had in contemplation the continued maintenance of the pond, which necessarily included the maintenance of the dam also. Among the many provisions of this kind are notably that in the sixth and seventh subdivisions, in relation to the

substitution of a large canal from any pond on either side of the island, and that in the eighth subdivision, that neither party was to be considered obligated to the other to make or keep up repairs upon the dam appurtenant to the pond. The first would have been both useless and meaningless if the grantors had the unconditional right at any time to remove the dam and destroy the pond, and the second clearly implies that either party had the right to repair the dam, but stipulates that neither shall be obligated to the other to do so. In order to give any reasonable effect to the grant, the restrictive clause in the deed must be construed as merely excluding a grant by implication or intendment of any principal easement in the grantors' land, but as not excluding those ancillary or secondary easements or rights which are necessary to the enjoyment of the rights or easements expressly granted and so appurtenant to them as to constitute an essential part or element of them. Of this character, in our opinion, was the right to maintain this pond by means of the dam. It was necessary to the enjoyment of the right to draw water from the pond, and an essential part of that right, and passed by the deed, notwithstanding the restrictive clause. Cutter, Secombe & Carpenter, therefore, had the right to maintain the dam as it then existed, or as subsequently extended, to the same extent that Farnham & Lovejoy possessed the right. The latter had this right to the extent of the land owned by them, and, in addition thereto, the right of flow and reflow on plaintiff's land reserved in the "Kingsley" deed.

It is claimed, however, that this right of flow and reflow gave no right to build a dam in front of plaintiff's land and between it and the main western channel of the river. The right of flow and reflow manifestly could not be enjoyed in any other way than by maintaining a dam, and, notwithstanding the familiar rule invoked by plaintiff that a reservation in a deed in favor of the grantor is to be construed more strictly than a grant, this reservation must be held to include any means indispensably necessary to the exercise of the right reserved. The evident and sole purpose was to create a pond appurtenant to the water-power on the grantors' remaining land on the west side of the island. This could only be effected in one of two ways, viz.: *First,* by building a dam entirely across the river; or,

*second*, by building a wing-dam up stream, as was afterwards done. To say nothing of its apparent impracticability, Kingsley or his grantees would have no authority to do the first unless he or they also owned the land on the west side of the river. Moreover, it is not apparent that it would be any more onerous upon the land of plaintiff to flow it by means of a wing-dam than by a cross-dam, for the wing-dam in and of itself works no apparent injury. In short, the construction of the wing-dam is the only practicable mode of exercising the right of flowage, and is as little onerous to plaintiff as any other method, and must therefore be deemed a right included in the reservation as an essential and necessary part of it. The defendant, therefore, has the right to maintain this pond by the maintenance of a side-dam sufficient to flow and reflow so much of the west side of the island (not beyond the point designated in the Kingsley deed) as may be necessary to the full enjoyment of the water-rights granted in the Farnham & Lovejoy deed.

It appears from the findings of the court that this dam, as extended since 1875, is now maintained above and beyond that point. As Farnham & Lovejoy had not this right, and as it is elementary that a grantor cannot convey what does not belong to him, or constitute it a part of or appurtenant to the land conveyed, it follows that no right to maintain the dam so as to flow and reflow plaintiff's premises beyond the point named in the "Kingsley" deed passed by the deed to Cutter, Secombe & Carpenter. Nor has any such right been since acquired by prescription, because, according to the findings of the court, this part of the dam was constructed in 1875, and subsequent to that date. Neither does the fact that plaintiff has subsequently bought out Farnham & Lovejoy affect the rights of the parties in that respect, for, assuming that the land of the latter was subject to such a servitude, the acceptance of a deed of the land by plaintiff would not attach a similar servitude to other land previously owned by it.

The plaintiff has extended a dam previously built across the east channel of the river, and above the head of the island, into the west channel, a distance of some 750 feet, so as to connect with the dam of the Minneapolis Mill Company, which is built out from the west side

of the river.   The effect of this is to collect the water from the east half of the west channel of the river, and convey it into the east channel east of Hennepin island, and thus prevent the water from flowing, as it naturally would, into the mill-pond on the west side of the island, from which defendant obtains its power.   This is clearly an invasion of defendant's rights.   Plaintiff's charter gives it no such power.   *Morrill* v. *St. Anthony Falls Water-Power Co.*, 26 Minn. 222, (2 N. W. Rep. 842.)   But it does not follow that defendant has any absolute right to insist that this dam shall be removed.   The amount of the water in the pond with plaintiff's dam removed would, or at least might, far exceed the amount which defendant would be entitled to under the Farnham & Lovejoy deed; and, independently of the provisions in that deed, giving the grantees the right to substitute another canal, the plaintiff, as the owner of all the island and riparian rights appurtenant thereto, except what belongs to the defendant, has the right to use these rights in any way that will be most beneficial to it, provided, only, that it furnishes to defendant the amount of water-power it is entitled to.   If it does this by letting the requisite amount of water into the pond by means of a sluiceway in its dam, the defendant will have no right to complain; and thus far the court below proceeded upon a correct view of the relative rights of the parties.   The water-power which the city is entitled to would be just what it would have (not exceeding the amount granted in the Farnham & Lovejoy deed) with the wing-dam maintained to the extent authorized by the reservation in the Kingsley deed, with plaintiff's dam removed.

  Defendant's answer was in the nature of a cross-bill or counterclaim, setting up its rights under the Farnham & Lovejoy and Kingsley deeds, and the alleged amount of power it was entitled to under these deeds; also claiming that plaintiff's dam, by diverting the natural flow of the water into the pond and destroying its power, was an unlawful interference with its rights, and demanding judgment that plaintiff be enjoined from obstructing the natural flow of the water into the pond, and, if necessary in order to protect defendant's rights, that plaintiff be required to remove its dam.   While both parties framed their pleadings and conducted the trial upon a somewhat er-

roneous theory as to their legal rights, and hence did not directly present the issue as to the amount of water-power which plaintiff should furnish defendant through a sluiceway in its dam in case it elected to maintain the dam, yet, in view of what has been already said, it is evident that this became upon the trial the important question in the case, the determination of which was absolutely necessary in order to the rendition of any judgment sufficiently definite and certain to settle the rights of the parties or to form the basis of any injunction, mandatory or prohibitory. The decision of the court is that, until the substitution of power permitted by the Farnham & Lovejoy deed, the defendant is entitled to judgment restraining the plaintiff from obstructing the natural flow of the water in the river to such an extent as to deprive the defendant of the quantity of water to which it is entitled, to wit, an amount equivalent in power to the quantity it is entitled to draw from the pond; that if the sluiceway in plaintiff's dam is sufficient to furnish such quantity no interference with plaintiff's dam would be necessary; otherwise the sluiceway must be enlarged; and judgment was ordered accordingly. But this contains nothing that defines or contains any means of making certain the exact rights of the parties, or upon which any judgment could be entered or any injunction made effective. If judgment were entered it would simply refer the parties to another lawsuit to determine their exact rights. We think, therefore, that the cause should be remanded, with instructions to the trial court to ascertain the exact amount of water or power the defendant is entitled to as laid down and defined in this opinion, and state the same in such definite and fixed terms that it may be the basis of such a decree or judgment as will finally settle the rights of the parties and furnish a definite guide for their future conduct. This may, under the circumstances, be difficult to do, but it is the only way that we can see by which a judgment can be rendered that will be of much practical value to the parties.

Cause remanded, with directions to proceed in accordance with the views expressed in this opinion.