**BYRAM et al. v. CHICAGO, ST. P., M. & O. RY. CO.**

**CHICAGO, ST. P., M. & O. RY. CO. v. BYRAM et al.**

Circuit Court of Appeals, Eighth Circuit.

August 24, 1927.

Nos. 7716, 7717.

**1. Vendor and purchaser ⟐230(1)—Vendee is charged with notice of incumbrances and equities in any instrument in chain of title.**

A vendee is charged with notice of incumbrances, liens, and equities affecting his title, which appear in any instrument in his chain of title, and its vendor cannot convey to it any better title than vendor has.

**2. Railroads ⟐138—Railroad taking conveyance with notice of reservation of trackage rights in prior recorded deed to its grantor held bound thereby.**

Where a railroad, in carrying out a general plan of constructing a new union depot terminal in which nine railroads were interested, conveyed a strip of land to depot company by recorded deed containing reservation requiring grantee, its successors and assigns, to construct, maintain, and operate for grantor's use, in common with other of grantee's tenants, adequate and suitable tracks, connecting at such points on boundary of grantee's property as may be designated by grantor, *held* that another railroad to which depot company conveyed portion of such strip by deed not mentioning the reservation, but which had actual and constructive notice thereof, was bound thereby.

**3. Railroads ⟐138—Railroad in deed, reserving right to designate place of connection of its tracks with terminal tracks, held not estopped to designate certain connection because of construction of other tracks by terminal.**

Where O. railroad, which had granted an easement over its tracks running to a union depot terminal to M. railroad, subsequently, in carrying out general plan for construction of new union depot terminal, conveyed strip of land to depot company by recorded deed containing reservation requiring grantee to construct, maintain, and operate for grantor's use suitable tracks connecting at such points on boundary of grantee's property as grantor might designate, it being contemplated by the general plan that M. would acquire O.'s rights in the tracks jointly used by M. and O., and that O. should enter the depot by other tracks, *held* that O. was not estopped to designate point of connection on tracks jointly used with M. because it acquiesced in depot company's construction of the other tracks for it, where M. never acquired its right in tracks jointly used.

**4. Tenancy in common ⟐13—One cotenant cannot enjoy common property so as to destroy cotenants' rights.**

One cotenant does not have the right to enjoy the common property in such a way as to destroy the rights of his cotenants.

**5. Tenancy in common ⟐38(1), 55(1)—Interference by stranger or tenant in common with cotenant's rights may be enjoined.**

An injunction may issue to restrain an interference by stranger or by one tenant with cotenant's rights in the enjoyment of the common property; each cotenant having right to possession of all property held in cotenancy, equal to the right of each of his companions in interest, and superior to that of other persons.

**6. Railroads ⟐139—Decree involving trackage rights should retain jurisdiction respecting matters depending on whether certain features of terminal construction plan would be carrier out or abandoned.**

Where question whether plaintiff railroad was entitled to decree directing defendant railroad to lower certain tracks connecting with new union depot terminal to the level from which they had been raised by defendant depended on whether certain features of the broad plan for constructing new terminal would be carried out or abandoned, proper determination of which might require additional evidence, decree should retain jurisdiction in court for purpose of determining such question.

Appeal from the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

Suit by the Chicago, St. Paul, Minneapolis & Omaha Railway Company against H. E. Byram and others. From the decree in so far as it is in favor of plaintiff, defendants appeal, and, from the portion thereof adverse to it, plaintiff cross-appeals. Affirmed as to defendants' appeal, and modified as to plaintiff's cross-appeal.

F. W. Root, of Minneapolis, Minn. (C. O. Newcomb and A. C. Erdall, both of Minneapolis, Minn., on the brief), for H. E. Byram and others, as receivers of Chicago, M. & St. P. Ry. Co.

R. N. Van Doren, of Chicago, Ill. (Richard L. Kennedy, of St. Paul, Minn., on the brief), for Chicago, St. P., M. & O. Ry. Co.

Thomas D. O'Brien, of St. Paul, Minn. for St. Paul Union Depot Co.

Before KENYON and BOOTH, Circuit Judges, and MOLYNEAUX, District Judge.

KENYON, Circuit Judge. An appeal of the receivers of the Chicago, Milwaukee & St. Paul Railway Company and the St. Paul Union Depot Company, and a cross-appeal of the Chicago, St. Paul, Minneapolis & Omaha Railway Company are here involved. As we consider both in this opinion, instead of using the term appellants and appellees, we designate the parties involved, for reasons of clarity, as follows: The Chicago, St. Paul, Minneapolis & Omaha Railway Company as the Omaha Company, the Chicago, Milwaukee & St. Paul Railway Company and its re-

ceivers as the Milwaukee Company, and the St. Paul Union Depot Company as the Depot Company. At the time of the commencement of this suit, the Milwaukee Company was in the hands of receivers, and appellants Byram, Potter, and Brundage were the duly appointed receivers.

The Omaha Company brought suit in the United States District Court for the District of Minnesota against the Milwaukee Company and the Depot Company to enjoin them from denying to it the use of certain railway tracks in the city of St. Paul affording means of access to the new Union Depot, and asking for a mandatory injunction to require the Milwaukee Company to restore to their original elevation as when constructed certain tracks referred to as the two northerly temporary tracks.

The court found in favor of the Omaha Company, except on one phase of the matter, which is presented by the cross-appeal, and entered a decree restraining and enjoining the Milwaukee Company from using what are known as the two southerly tracks extending westward from the east line of Minnesota street in the city of St. Paul, except in common with the Omaha Company, and from interfering with the Omaha Company's access thereover to the property of the Depot Company; from denying to the Omaha Company or interfering in any way with the right reserved by the Omaha Company in its deed to the St. Paul Union Depot Company of free ingress and egress to and from the property of the Depot Company over said southerly tracks between the east line of Minnesota street and the property of the Depot Company. Relief was also granted by the decree as to the Depot Company, and the application of the Omaha Company for a mandatory injunction requiring the Milwaukee Company to restore the two northerly temporary tracks to their original elevation as when constructed was denied. From the latter the Omaha Company prosecutes a cross-appeal; the Milwaukee Company and the Depot Company appealing from the other part of the decree. The facts are complicated; the essential ones being as follows:

The Omaha Company, for a considerable period of time prior to 1888, had the fee title to blocks 36, 37, 38, and 39 in the city of St. Paul proper, and the streets adjacent thereto, subject to public easements, and of the land lying between the south line of said blocks and the Mississippi river. September 11, 1888, the Omaha Company granted to the Milwaukee Company an easement and right of way for a permanent double track, to be owned, maintained, and used in common with it along the bank of the Mississippi river over the east end of block 39 in front, or south of blocks 36, 37, and 38 to the center line of Wabasha street. By the same instrument the Milwaukee granted to the Omaha an easement and right of way upon and over the tracks of the Milwaukee from the east end of block 39 and in front of lot 1 of block 31 and of block 30 in St. Paul proper, and across Sibley street to connections with the tracks of the Union Depot Company. Prior to 1888 these two companies had jointly used over the Omaha Company's property a single track in a different location.

The purpose of the agreement of 1888 was to put into permanent operation between the center line of Chestnut street and a connection with the Union Depot tracks, a permanent double track to be throughout the common property of the parties, and to be maintained and used in common with equal rights to each party. By another agreement it was provided that the Milwaukee Company should be charged with the duty of maintaining and keeping in good condition and repair said double tracks. The tracks as provided by the agreement of September, 1888, were constructed in 1890.

About the year 1912 plans were under consideration for the construction of a new Union Depot terminal at St. Paul. Nine railroads were interested in the proposition. Meetings were held during a period of years by the officers and committees. Written plans were made and were from time to time amended. When finally completed, they required an expenditure in excess of $13,000,000, and a general raising or elevation of the depot property, and also the acquisition of certain property from, and concessions by, the various railroads. The Milwaukee Company had for some years been working on a plan that would insure it a system of continuous double tracks to be exclusively owned by it, and which would connect its tracks from the south and east with its short line tracks to Minneapolis, and with the joint tracks of the Omaha Company at Chestnut street. The general plan provided for extending the depot property westerly to the east line of Minnesota street, which necessitated the acquisition of certain property of the Milwaukee Company and of the Omaha Company.

December 18, 1916, subsequent to the approval of the last general plan known as No. 115, the Omaha Company deeded to the Depot Company a strip of land 61.43 feet in width extending from the east line of Minne-

sota street to Robert street, and from thence easterly of irregular width to the east line of block 39, subject to certain restrictions, the important one so far as this controversy is concerned being No. 2, reading as follows:

"(2) That the grantee, its successors and assigns, shall construct and forever maintain and operate for the use of the grantor, its successors and assigns, in common with other tenants of grantee, adequate and suitable tracks, connecting at such points on the boundary of the grantee's property as may be designated by the grantor, its successors and assigns, the main track or tracks of the grantor, its successors and assigns, with the tracks of the grantee, its successors and assigns."

The third restriction of the deed provided that grantee should maintain for the use of grantor adequate transfer tracks not less than two in number, over which the grantor might move its freight traffic across the property of grantee, including track connections to be designated by the grantor, its successors and assigns, between said transfer tracks and the joint or several tracks, or leased tracks of the grantor, at the boundaries of the property of said grantee. The deed was recorded October 11, 1917, and prior thereto was submitted to the general counsel of the Milwaukee Company for the information of that company. December 18, 1916, the Milwaukee Company made a conveyance to the Depot Company of a strip of land extending from the east line of block 39, eastward across the property of the Milwaukee Company, to the west line of the property of the Depot Company at Sibley street. The Depot Company transferred to the Milwaukee Company, by deed dated December 18, 1916, but not executed or delivered until 1919, the southerly 30 feet of the strip which had been conveyed by the Omaha Company to the Depot Company. This deed did not contain the restrictions and reservations heretofore pointed out in the deed of the Omaha Company to the Depot Company. The intention of this conveyance was to provide for the Milwaukee Company an exclusive double-track system and right of way to the east line of Minnesota street, and, if the Milwaukee Company, in pursuance of the general broad plan, should acquire the Omaha Company's rights in the two southerly tracks lying between the east line of Minnesota street and Wabasha street which had been used in common under the agreement of 1888, it would give the Milwaukee its double-track system as desired by it and urged by it in the arrangements theretofore had, and enable it to run trains through the city of St. Paul without passing over the tracks or property of the Depot Company, which was apparently the Milwaukee Company's chief desideratum in the entire plan. The Omaha Company and the Milwaukee Company used the two tracks constructed in the year 1890 pursuant to the agreement of September 11, 1888, until the fall of 1924, or the spring of 1925. The general plan adopted requiring the elevation of the tracks, the Depot Company began elevating its property east of Minnesota street in 1924, which made the use of the two tracks constructed under the agreement of September 11, 1888, impossible.

To handle this situation, an agreement between the Milwaukee Company and the Omaha Company was made in July, 1924, for the construction, maintenance, and use of two other tracks on property belonging to the Omaha Company lying north of that occupied by the southerly double tracks and connecting with the tracks of the Depot Company at the east line of Minnesota street. These tracks were elevated 6 or 7 feet above the level of the original freight house track at Minnesota street, and their construction necessitated the removal of a track serving the Omaha Company's freighthouse at that point. Late in the year 1925 the elevation of the tracks of the Depot Company east of Minnesota street was completed by that company, and the tracks west of Minnesota street, including the southerly tracks and the northerly tracks, were elevated by the Milwaukee Company pursuant to the agreement of July, 1924; the two northerly tracks being elevated about 11 feet above the level at which they were when first put in service. This was done over the objection of the Omaha Company; it serving notice on the Milwaukee Company to stop the work thereon. No claim was made by the Milwaukee Company that it was entitled to collect anything from the Omaha Company because of the use by it of the tracks across the 30-foot strip deeded to the Milwaukee Company by the Depot Company until April 20, 1925, when it asked permission to make a bill therefor, which permission was refused. After the conveyance by the Omaha Company to the Depot Company of this strip, the Omaha Company continued to use the two southerly tracks up to the time of the different arrangement provided by the agreement made in July, 1924, for the construction of the northerly tracks. After the two southerly tracks were elevated so that they were serviceable, the Milwaukee Company and the Depot Company refused to permit the Omaha

Company to use them east of Minnesota street as a means of access to the Union Depot. The Omaha Company requested of the Depot Company that it route its trains over the southerly tracks. This request was denied. The Depot Company had control of trains operated east of Minnesota street; the Milwaukee Company controlling train operations on the southerly tracks west of Minnesota street. After the Omaha Company was denied the right to use the two elevated southerly tracks for access to the Union Depot, it served upon the Depot Company a notice and demand for track connections between its tracks and those of the Depot Company under reservation No. 2 of the deed made by the Omaha Company to the Depot Company. It designated as the point of connection at the east line of Minnesota street a location identical with that of the location of the permanent double tracks constructed under the agreement of September 11, 1888, and with the location of the two southerly tracks in their elevated position.

The Omaha Company being denied access to the two southerly tracks where they passed over the strip of property conveyed by the Depot Company to the Milwaukee Company immediately east of Minnesota street, and in order to prevent the elevation of the two northerly temporary tracks, commenced this action.

The trial court in its opinion states that the evidence shows plainly that at the time the Omaha Company gave its deed to the Depot Company of the property east of Minnesota street, and at the time the Depot Company gave its deed to the Milwaukee Company of the southerly 30 feet of the same tract, it was in accordance with the carrying out of the general plans of the Depot Company, and that it was contemplated by all concerned that the Milwaukee Company would, in addition to acquiring the 30-foot strip from the Union Depot Company, acquire the right from the Omaha Company to use exclusively the two southerly tracks lying between Wabasha street and the east line of Minnesota street which it had been using in common with the Omaha Company under the agreement of 1888, and that this was the reason no reference was made to the reservation in the deed of the Omaha Company to the Depot Company similar to that contained in the deed of the Depot Company to the Milwaukee Company, and the court points out that the controversy has come about by the failure of the Milwaukee Company to acquire from the Omaha Company its rights in the two southerly tracks. This is the crux of the entire matter.

It is the claim of the Milwaukee Company that for approximately ten years it had under consideration a plan which would require the appropriation for its exclusive use of the two southerly tracks which were being used jointly by it and the Omaha Company, and that this would require the joint tracks of the Milwaukee Company and the Omaha Company to be located on the property of the Omaha Company north of the double-track right of way; that negotiations had been carried on by the Milwaukee to secure the property of the Omaha Company west of Minnesota street; that these negotiations had never been completed, the parties being unable to agree upon the price for the Omaha Company's interest in the property between the east line of Minnesota street and the centre line of Wabasha street; that these negotiations were confined to the property west of Minnesota street, and that the matter east of Minnesota street had been settled by the deeds of December 18, 1916; that thereby the Omaha Company surrendered its rights and interest to the southerly 30 feet of the 61.43-foot strip which it had deeded to the Depot Company; that the obligation of the Depot Company in said deed to construct, maintain, and operate for the use of the Omaha Company suitable tracks connecting at such points of the boundary of the Depot Company's property as might be designated by the Omaha Company was fulfilled when the two northerly tracks were constructed to the boundary of the Depot Company's property at the east line of Minnesota street. Further, the Milwaukee Company's position is that the Omaha Company permitted the work of construction to proceed with the intention and understanding of all parties that the Omaha Company should enter the depot by the northerly tracks and that the Milwaukee Company should have the exclusive right to the two southerly tracks; that by standing by and permitting large expenditures the Omaha Company should be held to have designated under the reservations of its deed as a point of connection the place where the two northerly tracks meet the tracks of the Depot Company at the east line of Minnesota street.

It is the claim of the Depot Company that its deed to the Milwaukee Company was executed and delivered with the knowledge, acquiescence, and consent of the Omaha Company, and that by so consenting the Omaha Company limited its right to demand from the Depot Company, under the reservations

contained in the deed, connecting tracks at any place, except upon that portion of the tract conveyed by the Omaha Company to the Depot Company and not conveyed by that company to the Milwaukee Company, which would be the northerly 31.43 feet of the tract originally owned.

It is the claim of the Omaha Company that, while a general plan existed as to the depot terminals which would give the Milwaukee Company its double trackage both east and west of Minnesota street, that plan contemplated the acquisition by the Milwaukee Company of the Omaha Company's rights in the double tracks and the land underlying the same west of the east line of Minnesota street; that the Milwaukee Company never carried out its part of the plan, and never secured such rights and interests of the Omaha Company, and that the Milwaukee Company is attempting to obtain exclusive rights in the two southerly tracks west of Minnesota street by preventing the Omaha Company's use of the tracks east of Minnesota street crossing the property deeded to the Milwaukee Company by the Depot Company, thus accomplishing exactly what it would have accomplished by the purchase of the Omaha Company's property west of Minnesota street; that the Milwaukee has an easement for the two southerly tracks west of Minnesota street, and that it is attempting to enlarge that easement so as to exclude the Omaha Company therefrom and practically to dispossess it; that for seven years after the deed from it to the Depot Company and for five years after the deed of the Depot Company to the Milwaukee Company the Omaha Company continued to use jointly with the Milwaukee Company the two southerly tracks both west and east of Minnesota street as a means of access to the Union Depot. When its right to use these tracks was denied, it immediately served notice and demand for track connections under the reservation in its deed to the Depot Company.

That the Omaha Company was the owner of the property in which it granted to the Milwaukee Company, by the agreement of September, 1888, an easement for joint tracks to be used in common as a means of access to the property of the Depot Company, is unquestioned in the record.

It is apparent that the vital question in the case is the alleged right of the Omaha Company to designate, as it did in November, 1925, the southerly 30 feet of the strip of land which it had deeded to the Depot Company and which the Depot company some time later had deeded to the Milwaukee Company, as the place of connection for its tracks with the tracks of the Depot Company.

The deed from the Omaha Company to the Depot Company which contains the reservation in question, heretofore set out in full, was recorded on October 11, 1917. This deed was submitted to the general counsel of the Milwaukee Company before its delivery. No objection was raised by that company to reservation No. 2. The trial court found that the deed from the Depot Company to the Milwaukee Company, while dated December 18, 1916, was not executed and delivered until 1919. We think this conclusion of the court was supported by the evidence. Mr. Seymour, attorney for the Depot Company, wrote Mr. Jensch, secretary of the Depot Company, under date of April 21, 1919, as follows:

"At the earliest time possible, let us make settlement with the Chicago, Milwaukee & St. Paul. * * * Will you please have ready the deed, fully executed by you and Mr. Pennington, from the St. Paul Union Depot Company to the Chicago, Milwaukee & St. Paul, which we handed you for execution several months ago."

It appears from the evidence that the Milwaukee Company not only had actual, but constructive, notice of the reservations in the deed from the Omaha Company to the Depot Company. In fact this is not seriously questioned in the case. The Milwaukee Company permitted the use of these southerly tracks across the strip east of Minnesota street by the Omaha Company for a period of five years after the delivery of the deed from the Depot Company to it, without any claim that the Omaha Company had no such right to use them, and at no time up to April 20, 1925, presented to the Omaha Company a bill for the use thereof. The reservation provided that the grantee (the Depot Company), its successors and assigns, should maintain adequate and suitable tracks connecting, at such point on the boundary of the grantee's property as may be designated by the grantor, the main track or tracks of grantor with the tracks of the grantee. The notice given to the Depot Company, after the Omaha Company had been refused permission to use these tracks, designated a point of connection with the Depot Company's tracks at the east line of Minnesota street identical with the then position of the tracks. The deed of the Omaha Company containing this reservation had been on record since October 11, 1917, while the Milwaukee Company did not receive its deed from the Depot Company

until 1919. Under this situation it seems clear that the Milwaukee Company had notice and knowledge of the rights and reservations by the Omaha Company in the property which the Milwaukee Company received by the deed from the Depot Company, and took title subject thereto.

[1] That a vendee is charged with notice of incumbrances, liens, and equities affecting his title which appear in any instrument in his chain of title is settled law. This notice may be constructive or actual. In this case the Milwaukee Company had both. The Depot Company did not convey to the Milwaukee Company a better title than it secured from the Omaha Company.

19 Corpus Juris, p. 910, states: "A grantor of land may, by an exception or reservation in his deed, create an easement in the land granted for the benefit of his remaining land, in which case the fee of the soil passes incumbered by the easement excepted or reserved, and the right and burden thus created will pass to, and be binding upon, all subsequent grantees of the respective tracts. An omission of the reservation in a subsequent deed of the servient estate will not relieve it of the burden of the easement."

In 18 Corpus Juris, p. 318, § 309, it is stated that: "A deed which purports to convey a greater estate than the grantor has, will be void as to only the excess and will be construed as a conveyance of that which it was in his power to convey." St. Anthony Falls Water Power Co. v. City of Minneapolis, 41 Minn. 270, 43 N. W. 56; Kettle River Ry. Co. v. Eastern Ry. Co. et al., 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; Sioux City & St. P. R. Co. v. Singer, 49 Minn. 301, 51 N. W. 905, 15 L. R. A. 751, 32 Am. St. Rep. 554.

[2] The Omaha Company having reserved the right to make this designation as to tracks in an instrument duly of record, and, further, the Milwaukee Company, having actual notice thereof by the examination prior to its delivery by its general counsel apparently charged with conducting the negotiations, was bound by the reservation.

[3] It is contended by the Milwaukee Company, and also by the Depot Company, that the circumstances show that the Omaha Company, by acquiescing in the general scheme of track elevation and the use of the two northerly tracks to reach the Depot Company's property, had designated the two northerly tracks, and that this fulfilled every duty which the Depot Company owed to the Omaha Company under reservation No. 2 of the deed, and estopped the Omaha Com-

pany from any other designation. We think this position untenable. The Omaha Company had used the southerly tracks jointly with the Milwaukee Company for seven years after it had made the deed to the Depot Company, and it could with much more force be claimed that this was a designation on the part of the Omaha Company of the place it desired connections with the Depot Company's tracks, viz. where the southerly tracks intersect the Depot Company's property at Minnesota street. The northerly tracks were originally constructed for temporary purposes. There is no doubt, as stated by the trial court, that it was intended the Omaha Company should enter the depot by the northerly tracks if the broad plan had been carried out, and that the Milwaukee Company should have the exclusive right to the southerly tracks, "but that was all based upon the assumption that the Milwaukee would acquire the rights of the Omaha in the two southerly tracks west of Minnesota street, which it intended to do, but has not done."

The deed of the Omaha Company to the Depot Company was made and accepted by that company after the adoption by its directors of the final terminal depot plan No. 115. By this deed the Omaha Company reserved the right to connect its tracks with the Depot Company tracks at such points on the east line of Minnesota street as it might designate. If this right of designation does not apply to the southerly 30 feet conveyed by the Depot Company to the Milwaukee Company, then the use of the word "designate" in the reservation would be without meaning. If the Omaha Company is restricted without choice to the northerly 30 feet for its two tracks, there is no space it could "designate." Further, for seven years following the execution of the Omaha Company's deed to the Depot Company it had used the two southerly tracks with the acquiescence of the Milwaukee Company and the Depot Company. Therefore there was no reason for any designation under the reservation of the deed until the right to use said tracks was denied the Omaha Company.

The difficulty with the whole situation is that the broad plan was not carried out, and the Milwaukee Company is now apparently claiming rights which it would have secured only upon completion of the plan, but until the interest of the Omaha Company in the two southerly tracks west of Minnesota street had been acquired by the Milwaukee Company the plan could not be fully consummated.

[4, 5] The very purpose, as claimed by the

Omaha Company, that the reservation in question was put in the deed to the Depot Company, was to protect the Omaha Company's rights until the broad plan should be carried out. It seems to us the equities of this case are with the Omaha Company, and that it had the right to make the designation it did as to track connections for access to the depot terminals. If the right of the Milwaukee Company in the land and tracks be regarded as a cotenancy instead of an easement, it would have no right to practically oust the Omaha Company from said tract of land. One cotenant does not have the right to enjoy the property in such way as to destroy the rights of his cotenants.

38 Cyc. 97, states the rules as follows: "An injunction may issue to restrain an interference by a tenant in common with his cotenant's rights in the enjoyment of the common property, or the interference with such rights by a stranger."

7 Ruling Case Law, 15: "Each cotenant has the right to the possession of all the property held in cotenancy, equal to the right of each of his companions in interest, and superior to that of all other persons." Wilcox v. Leominster Nat. Bank, 43 Minn. 541, 45 N. W. 1136, 19 Am. St. Rep. 259; Mullins v. Butte Hardware Co. et al., 25 Mont. 525, 65 P. 1004, 87 Am. St. Rep. 430; May et al. v. Chesapeake & O. Ry. Co., 184 Ky. 493, 212 S. W. 131; Morrison v. Clark, 89 Me. 103, 35 A. 1034, 56 Am. St. Rep. 395; Smith et al. v. Stearns Rancho Co. et al., 129 Cal. 58, 61 P. 662.

The position of the Milwaukee Company, if sustained, would not only take from the Omaha Company the rights reserved in its deed to the Depot Company to designate the point of connection with the tracks of that company, but would destroy as a practical matter all the interest of the Omaha Company in the two southerly tracks west of Minnesota street, and give to the Milwaukee Company the exclusive use of these tracks, without any compensation to the Omaha Company for its interest, although its rights under the agreement of September 11, 1888, are limited, as we view it, to an easement for tracks to be used in common with the Omaha Company, in order that both companies may have access to the St. Paul Union Depot. The Omaha Company cannot use the two southerly tracks west of Minnesota street unless it can use the connecting tracks from the east line of Minnesota street across the tract deeded by the Depot Company to the Milwaukee Company. As said by the trial court: "That to deny the Omaha the right reserved in its deed would be to virtually give to the Milwaukee the property of the Omaha underlying the southerly tracks west of Minnesota street."

Under reservation No. 3, the Depot Company was to maintain for the Omaha Company not less than two freight transfer tracks, including track connections at the boundaries of its property, to be designated by the Omaha Company. This reservation would apparently be rendered of no avail if the Milwaukee Company's position is correct.

Counsel for the Milwaukee Company in its argument suggest that the bringing of the suit on the part of plaintiff was ill-advised on account of the fact that negotiations were being carried on but not completed. That the entire controversy is ill-advised is apparent, but there is no greater blame to be attached to the Omaha Company than to the Milwaukee Company for the failure to carry out the general plan.

The Milwaukee Company complains that it is placed at the mercy of the Omaha Company, and that the purpose of the suit is to force the Milwaukee Company to comply with the Omaha Company's terms as to price of its interest in the tracks west of Minnesota street. It appears from the evidence that, when the negotiations were under way in the working out of the general broad plan, the chief engineer of the Omaha Company submitted to the chief engineer of the Milwaukee Company a price upon the property fixed by a committee of three real estate men of St. Paul, which was the same price fixed by a similar committee employed by the Milwaukee Company. However, there is no power in this court, of course, to regulate that question in this case. The Omaha Company is entitled to insist on its legal rights.

The agreement of 1888 was not abandoned or entirely superseded by the deeds of 1916. The rights of the Omaha Company by virtue of that agreement and the reservations of its deed to the Depot Company to have connection for its tracks with the tracks of the Depot Company over the southerly 30 feet still existed. As those rights were not recognized by the Milwaukee Company and the Depot Company, the Omaha Company was justified in bringing the action.

There is no estoppel in this case as between the Omaha Company and the Milwaukee Company. Nor do we think the Omaha Company is estopped to demand from the Depot Company, under the reservation of the deed, connecting tracks at any other place than the northerly 31.43 feet of the tract conveyed by it to the Depot Company. We

find no evidence in the record that the Omaha Company acquiesced or consented to the deed from the Depot Company to the Milwaukee Company. There is no evidence that the Omaha Company had any notice of its provisions prior to the time it was recorded. The Depot Company accepted the deed with the reservations. It deeded to the Milwaukee Company without such reservations. The Milwaukee Company accepted the same with knowledge of the Omaha Company's rights. We fail to see how these matters can estop the Omaha Company from exercising its rights reserved in its deed to the Depot Company. There was no misrepresentation, and all parties knew the exact situation. We agree with the statement of the trial court on this question, viz.:

"There are none of the elements of an estoppel in this case. The Omaha did nothing to mislead the Milwaukee. The Milwaukee knew the entire situation. It knew of the reservation in the deed to the Depot Company; it knew that the Omaha owned the land west of the east line of Minnesota street, and knew that it would have to acquire the interest of the Omaha in the two southerly tracks in order to give it the exclusive use of such tracks. If there is any estoppel in this case, the Milwaukee, by its failure to complete its part of the understanding, is estopped from asserting that the Omaha has not the right to the joint use of these two southerly tracks as a means of access to the property of the Union Depot Company over the property of the Milwaukee lying east of the east line of Minnesota street."

We do not undertake, of course, to determine any questions as between the Depot Company and the Milwaukee Company.

### Cross-Appeal.

[6] As to the cross-appeal, it is the contention of the Omaha Company that the northerly temporary tracks were elevated by the Milwaukee Company beyond any point of necessity. The evidence tends to show that the two northerly tracks were elevated about 11 feet above the level at which they were when first put into service, and this was done over the objection of the Omaha Company, it maintaining that, when the temporary tracks were first constructed, they were elevated 6 or 7 feet above the level of the original freighthouse track, and that this was sufficient to maintain service into the Union Depot over the Depot Company tracks; that the elevation by the Milwaukee Company of the two northerly tracks west of Minnesota street above their original elevation when constructed was not necessary; that the Omaha Company needs more room for constructing tracks to its Robert street freighthouse, and that it cannot construct said tracks to serve said freighthouse without the removal of material which was placed there by the Milwaukee Company as the result of the unnecessary and additional elevation by it of said northerly tracks; and the Omaha Company insists that the court erred in its final decree in not requiring the Milwaukee Company to restore the two northerly tracks to such elevation as they were when originally constructed. The court in its original decree directed the receivers to restore the two northerly tracks between the east line of Minnesota street and Wabasha street to the condition they were on October 15, 1925, when the action was commenced. Subsequently the court amended its decision and decree, stating:

"It would seem unfair to require the Milwaukee to make a complete restoration of it if that is not desirable or necessary, and I should feel better satisfied with any order requiring restoration if I was somewhat more conversant with the extent of the elevation made by the Milwaukee after the action was commenced. My feeling about the matter is that the Milwaukee ought to remove such portion of the material used in the elevation of such tracks by it as was objected to by the Omaha, if that is required. Under all of the circumstances, I would prefer to eliminate from the order and the decree any reference to the restoration by the Milwaukee of the two northerly tracks, retaining jurisdiction, however, to determine that controversy, if it is necessary, in this proceeding."

In the final decree of September 8, 1926, it is stated:

"That the application of the plaintiff herein for a mandatory injunction requiring the defendants receivers to restore the two northerly temporary tracks to their original elevation as when constructed, is denied.

"This decree embraces all of the relief granted by those two certain decrees filed and entered herein on July 20 and August 3, 1926, and is intended to supersede said former decrees, and is also intended as an adjudication of that certain question with reference to the restoration of the two northerly temporary tracks which was eliminated from said decree of July 20, 1926, and of which jurisdiction was retained by the amended decree of August 3, 1926."

It is not quite clear whether or not the court intended to retain jurisdiction to determine the controversy as to the restoration of the northerly tracks by the Milwaukee Com-

pany to the condition called for by the agreement of July, 1924. We think the court should retain such jurisdiction and fix the time limit for the parties to agree whether the broad plan will be carried out or abandoned. In case the plan is abandoned, then the Milwaukee Company should be compelled to restore the northerly tracks to the condition called for by the temporary agreement of July, 1924. To properly determine this question may require additional evidence. We affirm the general decree of the trial court therefore, with the modification that it retain jurisdiction of the cause for the purpose here expressed. The decree should not foreclose the right of the Omaha Company to move in these proceedings for further re-·lief as to the elevation of the northerly tracks, ·in case the broad plan is abandoned.

Our conclusion in the case is that on the main appeal the decree of the trial court is affirmed. On the cross-appeal, the decree ·is modified as herein indicated.