EMMA MINCEY, Claimant, Appellee, v. DULTMEIER MANUFACTURING COMPANY, Employer, EMPLOYERS MUTUAL CASUALTY COMPANY, Insurance Carrier, Appellants.

No. 43746.

APRIL 6, 1937.

REHEARING DENIED JUNE 18, 1937.

Miller, Miller & Miller, for appellants.

Roy E. Havens and Floyd W. Elston, for appellee.

DONEGAN, J.—This is an action to enforce a claim for workmen's compensation. The claimant's husband, Walter Mincey, was employed by the Dultmeier Manufacturing Company at its factory in Manning, Iowa, where it manufactured wood implements and wood parts for implements. The building in which he worked was toward the south part of the premises owned by the defendant company and, to the north of this building and at a distance of approximately sixty feet therefrom, there was another building used by the defendant company as a warehouse for the storage of lumber and other materials. On the south end of the latter building there was an entrance to a passageway, which extended north inside the building, and at this entrance there was a sliding gate hung upon a metal track which extended along the top of the entrance. This gate was made of upright slats attached to a frame. On the south end of this building, some little distance above and to the south of the track upon which the gate operated, there was a metal eaves trough which extended all the way across the end of the building but had no down-spout or other direct connection with the ground. At both the east and west sides of the entrance enclosed by the gate there were up and down posts of heavy lumber. On the 7th day of September, 1935, claimant's decedent, with other employees, had partaken of his lunch in this building on the northerly side of the premises and about one o'clock he was proceeding southward through the passageway with the intention of going out of this south gate, which was then closed, and pro-

ceeding across the open space to the south building where his work was to be done. As he approached this gate from the north and had reached a point about one foot from the inside thereof, and apparently was about to reach toward one of the up and down slats or posts of the gate, he was struck by lightning and instantly killed. Thereafter, the claimant, the wife of the decedent, filed her claim with the Iowa industrial commissioner asking for compensation under the Workmen's Compensation Act (Code 1935, section 1361 et seq.).

In their answer the defendants admitted that the claimant's decedent was an employee of the manufacturing company and that he was killed by being struck by lightning substantially as we have stated above, but they denied that his death arose out of and in the course of his employment with the manufacturing company, and denied that there is any liability imposed upon the defendants under the Iowa Workmen's Compensation Act. By stipulation, there was a hearing before the deputy industrial commissioner, acting as sole arbitrator, and, at the close of such hearing, the deputy industrial commissioner found that the claimant had failed to prove that the death of the claimant's decedent resulted from injury arising out of and in the course of his employment. A petition for review was filed by the claimant and, upon such review by the industrial commissioner, he reversed the finding of the deputy industrial commissioner and found that the injury resulting in the death of the claimant's decedent arose out of and in the course of his employment, and awarded claimant compensation in the sum of $11.42 a week for a period of three hundred weeks. Appeal was taken by the defendants from the finding and order of the industrial commissioner to the district court of Carroll county, Iowa, which affirmed the finding and order of the industrial commissioner. From this order of the district court the defendants appeal.

No complaint is made as to the finding of the industrial commissioner that the claimant's decedent was killed while in the course of his employment, or as to the amount of compensation awarded. The error here relied upon is that compensation should not have been awarded at all, because there is no evidence to support the industrial commissioner's finding that the death of claimant's decedent arose out of his employment.

Where, as in this case, death or injury results to an employee from a stroke of lightning or other act of the elements, which

are frequently referred to as acts of God, the rule is well-established by the great weight of the authorities, that the work in which the employee is engaged must be such as to expose him to a greater danger than that to which other persons in the locality are exposed. The general rule is very well stated in 71 C. J. 757, as follows:

"In order that harm which results to an employee by reason of his exposure to the weather or natural elements may be compensable as an injury arising out of and in the course of his employment, the exposure of the employee by reason of his employment must be greater than that of other persons in that locality."

As sustaining this rule see 28 R. C. L. 806, section 94; Griffith v. Cole Bros., 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923; Wax v. Des Moines Asphalt Pav. Corp., 220 Iowa 864, 263 N. W. 333; and numerous cases cited in footnotes to text above quoted. As applied to death or injury resulting from lightning, there is a further statement of the rule in 71 C. J. 758, wherein it is said:

"Harm resulting from lightning may be compensable as an injury arising out of and in the course of the employment, where the injured employee is by reason of his employment peculiarly exposed to risk of injury from this source; but where the employment does not expose an employee to the risk of injury from lightning in a greater degree than usual, harm resulting from being struck by lightning may not be compensable."

This rule has been adopted and applied in the following cases: Griffith v. Cole Bros., 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923; Alzina Construction Co. v. Industrial Comm., 309 Ill. 395, 141 N. E. 191; Madura v. Bronx Parkway Comm., 206 App. Div. 598, 201 N. Y. S. 639; Emmick v. Hanrahan Brick & Ice Co., 206 App. Div. 580, 201 N. Y. S. 637; Wiggins v. Industrial Acc. Board, 54 Mont. 335, 170 Pac. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164; Thier v. Widdifield, 210 Mich. 355, 178 N. W. 16; Klawinski v. Lake Shore & M. S. R. Co., 185 Mich. 643, 152 N. W. 213, L. R. A. 1916A, 342; Hoenig v. Industrial Comm., 159 Wis. 646, 150 N. W. 996, L. R. A. 1916A, 339; De Luca v. Park Commissioners, 94 Conn. 7, 107 Atl. 611; United States F. & G. Co. v. Rochester (Tex. Civ. App.), 281 S. W. 306;

Netherton v. Lightning Delivery Co., 32 Ariz. 350, 258 Pac. 306; Lickfett v. Jorgenson, 179 Minn. 321, 229 N. W. 138; Deckard v. Indiana University, 92 Ind. App. 192, 172 N. E. 547; Nebraska Seed Co. v. Industrial Commission, 206 Wis. 199, 239 N. W. 432.

In his decision in review the industrial commissioner, while not expressly ignoring this rule, apparently eliminates its application to the facts of this case and holds that, because the course pursued by the electric current, commonly referred to as lightning, was controlled by the intervention of human agencies, the death of claimant's decedent cannot be said to have resulted exclusively from an act of God. Apparently it was the thought of the industrial commissioner that, because of the intervention of human agencies, the course of the lightning was not directly from the electrically charged cloud to the ground, or through some natural object such as a tree, but that the discharge reached the ground over and because of a pathway created for it by the building, eaves trough, post, track, hinge and slat on the gate or door; that, because of this human intervention, the course of the electric current was directed to the place where the claimant's decedent was located at that instant, and where he had a right to be in connection with his employment; and that, therefore, the hazard to which he was exposed was due to and arose out of such employment. The authority for this line of reasoning is given by the industrial commissioner as found in the definition of the term "Act of God" in 1 C. J. 1174, as follows:

"The most comprehensive definition of the term (Act of God) is any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonably to have been expected, could have been prevented.

"Human Agency Excluded. The principle embodied in all of the definitions is that the act must be one occasioned exclusively by the violence of nature and all human agency is to be excluded from creating or entering into the cause of the mischief. When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God."

The above quotation set out by the industrial commissioner does not contain all of the text. Immediately following the quotation above set out the text proceeds as follows:

"Thus if a party is in default for not performing a duty or not anticipating a danger, or where his own negligence has contributed as the proximate cause of the injury complained of, he cannot avoid liability by claiming that it was caused by an act of God. If divers causes concur in the loss, the act of God being one, but not the proximate cause, it does not discharge from liability. However, if the act of God is so overwhelming as of its own force to produce the injury independently of the negligence shown, the negligent party is not responsible."

Reading the entire paragraph in regard to the exclusion of human agency, it will be seen that human agency is to be excluded from *"creating * * * the cause* of the mischief;" or, "from *entering into* the *cause* of the mischief." It will also be seen that if a party is in default or negligent, he cannot avoid liability by claiming that an accident was caused by an act of God; or, if many causes concur in a loss, including an act of God, a party will not be relieved from liability unless such act of God is the proximate cause. And, at the end of the paragraph it is said that, "if the act of God is so overwhelming as of its own force to produce the injury independently of the *negligence* shown, the *negligent* party is not responsible." (Italics are ours.) It seems quite apparent from the whole paragraph that, unless the intervention of human agency creates a condition which a reasonably prudent person would have realized constituted a danger, in other words, unless the danger arising from the intervention of human agency amounts to negligence, the rule adopted by the industrial commissioner does not apply.

A great many cases have been cited by the parties to this appeal, in which death or injury has occurred as the result of lightning, and the discussion of the facts and reasoning on which the courts based their conclusions in these cases have been very extensive and varied. So far as we can recall, in none of the cases where compensation was awarded, was the intervention of human agencies given as the reason for holding that the death or injury arose out of the employment. In practically all of the cases, where compensation was awarded for death or injury caused by lightning, the reason for so holding was that, because

of the circumstances connected with the employment, the employee was exposed to a greater danger than other persons in the locality. Thus, in Andrew v. Failsworth (Eng.) 2 K. B. 32, where a bricklayer was killed while working on a scaffold twenty-three feet from the ground; in People's Coal & Ice Co. v. District Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344, where a driver of an ice wagon was killed while seeking shelter under a tree; in De Luca v. Park Commissioners, 94 Conn. 7, 107 Atl. 611, where an employee in a park took shelter under a tree; in Madura v. Bronx Parkway Comm., 206 App. Div. 598, 201 N. Y. S. 639, where an employee was directed to remain at the place of his employment and took shelter under a tree during a storm; in Emmick v. Hanrahan Brick & Ice Co., 206 App. Div. 580, 201 N. Y. S. 637, where a carpenter was struck by lightning while working on a shed which had a twisted wire cable looped about its rafters near the peak and passing within a short distance of the employee; and in United States F. & G. Co. v. Rochester (Tex. Civ. App.), 281 S. W. 306, where a workman was killed while excavating a pipe line with a steel shovel; death resulted to the employee from a stroke of lightning, and, in each of these cases, it was held that the accident arose out of the employment because the employee was exposed to a danger peculiar to the employment and to which other persons in the locality were not equally exposed. On the other hand, in numerous cases where compensation has been denied, because of the death of an employee by lightning, the reason for the holding has been that the employee was not exposed to any danger growing out of and peculiar to the employment and to which other persons in the locality were not equally exposed.

The case of Griffith v. Cole Bros., 183 Iowa 415, 165 N. W. 577, 581, L. R. A. 1918F, 923, is the only case in this state involving compensation for the death of an employee killed by lightning, and has been cited in many other jurisdictions. In that case the decedent and other employees of a bridge building company were in a tent in which they lived near the scene of their work. In considering the question as to whether the death arose out of the employment, this court said:

"It must appear by a preponderance that there is some causative connection between the injury and something peculiar to the employment (Jones v. United States Mut. Acc. Assn., 92

Iowa 652, 61 N. W. 485) ; that it resulted from some risk reasonably incident to the employment, because 'out of' involves the idea that the injury is in some sense due to the employment (Fitzgerald v. W. G. Clarke & Son, 2 K. B. [1908] 796)—a causative danger peculiar to the work, and not 'common to the neighborhood,' an injury fairly traceable to the employment as a contributing cause,—to some hazard other than one to which the workman would have been equally exposed though in a different employment (McNicol's case, 215 Mass. 497 [102 N. E. 697]) ; a hazard peculiar to the business which is 'the immediate cause' of the injury (Rodger v. Paisley School Board, 1 Scots Law Times [1912], 271, and see Robson, Eckford & Co. v. Blakey, 5 B. W. C. C. 536) ; an injury due to something more than the normal risk to which all are subject, which, at the least, means that the employment necessarily accentuates the natural hazard attendant upon work done in the course of the employment (State v. District Court, 129 Minn. 502 [153 N. W. 119]).

"The words 'out of' involve the idea that the accident is in some sense due to the employment. Barnabus v. Bersham Colliery Co., 103 L. T. R. 513; Fitzgerald v. W. G. Clarke & Son, 2 K. B. (1908) 796. It is said in Hopkins v. Michigan Sugar Co., 184 Mich. 87 (150 N. W. 325), 'an employe may suffer an accident while engaged at his work, or in the course of his employment, which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it.' "

Later, in the same opinion, it is further said:

" * * * speaking generally, being struck by lightning does not arise out of an employment, because *prima facie* it is something which arises altogether outside of such employment, and is a risk incidental to a small class of employments only."

There is nothing in the evidence in the instant case to indicate that the location of the defendant manufacturing company's plant exposed it to greater danger from lightning than other places in the vicinity. On the contrary, there is the evidence of an expert electrical engineer that, the location of the plant being lower than most other portions of the town of Manning; and, there being no high projections from the plant, such as were located on other land at no great distance from it; there was less

likelihood of a discharge of lightning striking any portion of defendant's plant than there was of its striking in most of the surrounding territory. There was also evidence that lightning tends to strike higher objects, and there is not only no showing that the building in which the claimant's decedent sustained his death was higher than other objects in its immediate vicinity, but there is evidence of poles carrying electric power lines running immediately alongside of the plant. The particular discharge of lightning which occurred did not strike the highest portion of the building, but struck the eaves trough over the door. There was no evidence to indicate that lightning was more likely to strike this eaves trough than other portions of the building, and there was nothing in the conditions existing before the discharge of lightning occurred to indicate that it would strike this eaves trough, jump from it to the post on the west side of the door, jump from the post to the track over the door, travel over this track to the east hinge which was bolted to a slat of the door, and then reach the ground through the decedent's body.

The actual duties of claimant's decedent were not performed where he was at the time he was killed, although he had a right to be there in the course of his employment. His work was performed in an entirely separate building sixty feet south of the spot where he met his death. If the gate near which he was standing had been open; if he had opened and passed through this gate only a few seconds earlier; or if he had been perhaps only a fraction of a second later in reaching the point where he was when he was struck; he would have been a sufficient distance from the path of the current so that it would not have passed through his body. We are unable to see how it can be said that there was a causative connection between the decedent's death and something peculiar to his employment; or how it can be said that the decedent's death was due to his employment. The fact that the lightning struck the eaves trough, and followed the course already described, does not seem to us to indicate that there was a danger connected with his employment which was greater than the danger to other people in the vicinity, any more than a danger greater than that to other persons in the locality could be said to be connected with or arise out of his employment, if he had been struck while crossing the open space between the north building and the south building, without the electric dis-

charge having followed any intermediate objects produced by human intervention before striking his body.

The circumstances surrounding the death of claimant's decedent were unusual, and one's sympathies are naturally aroused for the dependents for whose benefit the Workmen's Compensation law would provide compensation, if the death came within the provisions of this law. This law, however, was not intended and should not be construed by us as providing insurance for employees. Before compensation can be allowed it must be shown by the claimant, by a preponderance of the evidence, that the death of her decedent arose out of and in the course of his employment. We are unable to find any evidence in the record which sustains the finding of the industrial commissioner that the death of claimant's decedent arose out of his employment, and we are, therefore, constrained to hold that the order of the district court sustaining the decision of the industrial commissioner, and the decision of the industrial commissioner itself, must be, and they are hereby, reversed.—Reversed.

RICHARDS, C. J., and all Justices concur.