NOEL COVER, APPELLANT, V. PLATTE VALLEY PUBLIC POWER
AND IRRIGATION DISTRICT, A PUBLIC CORPORATION, APPELLEE.
75 N. W. 2d 661

Filed March 16, 1956.   No. 33807.

*Baskins & Baskins,* for appellant.

*Crosby, Crosby & Nielsen* and *W. A. Stewart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff Noel Cover, in his own right and as assignee of Armour and Company, brought this action to recover for flood damages to their described personal property alleged to have been proximately caused by negligence of defendant, Platte Valley Public Power and Irrigation District, in the construction and maintenance of a flood-

water drain under its canal. Defendant's answer denied that it was negligent as claimed by plaintiff and alleged in effect that the sole proximate cause of any damages sustained by plaintiff was an act of God. Further, it alleged that in any event plaintiff was barred and estopped from proving or recovering any damages from defendant in his own right because with full knowledge of its underpass drain plaintiff had entered into a contract to purchase from defendant the south 60 acres located in the northwest quarter and that part of the southwest quarter of Section 9 lying just north of defendant's canal, whereby plaintiff allegedly consented and agreed that the then existing underpass or drain could be maintained by defendant in its then condition and that plaintiff Cover would save defendant harmless from any damages caused thereby. Such lands will be hereinafter designated as the 60-acre tract. Plaintiff's reply was a general denial.

Upon trial to a jury, the trial court held as a matter of law that under the provisions of the contract aforesaid, plaintiff Noel Cover could not recover any damages in his own right. Instruction No. 10 given by the trial court so informed the jury, and only the issue of plaintiff's right as assignee of Armour and Company's alleged damages to its interest in the personal property was submitted to the jury. In that regard, concededly Noel Cover and Armour and Company had been contractually engaged in a large sheep feeding and marketing venture whereby Cover was to receive 30 percent of the profits and be liable for 30 percent of the losses, which in any event should not exceed $25,000 in any one year, while Armour and Company was to receive 70 percent of the profits and be liable for 70 percent of the losses. However, Armour and Company had concededly assigned to plaintiff all of its rights, interests, claims, and demands against defendant which it might have by reason of any damages caused by the alleged flooding on or about June 21 and

22, 1947. Therefore, if plaintiff was entitled to recover in his own right he was also entitled to have submitted and recover in one verdict the total amount of the damages sustained without confusing the jury in any manner by requiring it to ascertain any percentage of the loss individually sustained by either Cover or Armour and Company. As the issues were thus submitted, the jury returned a verdict finding for defendant, and judgment was rendered thereon. Subsequently plaintiff's motion for new trial was overruled and he appealed, assigning some 38 errors. Some of them were not argued and they will not be discussed. Those argued may be summarized as assigning: (1) That the trial court erred in holding as a matter of law that plaintiff Cover could not recover in his own right and in so instructing the jury; (2) that the trial court erred in the admission of certain evidence; and (3) that the trial court erred in the giving and refusal to give certain instructions. We sustain the assignments in the manner hereinafter set forth.

The record is voluminous and contains numerous photographs offered and received for the purpose of identifying the place where the flood occurred and the extent thereof. We need only summarize pertinent parts of the evidence as they relate to the assignments of error. The property alleged to have been damaged was some 26,000 sheep, 60 tons of feed, and 3 electric pump motors, all located on the northeast quarter of Section 8, and 220 tons of alfalfa and 1 electric pump motor, all located on the north 100 acres of the northwest quarter of Section 9. Said lands belonged to plaintiff Cover and none of the personal property claimed to have been damaged was located on the 60-acre tract contractually purchased by plaintiff from defendant. Any question with reference to the amount of the damages is not an issue for determination here. It is sufficient for us to say that the extent thereof was not controverted by defendant. Such damages resulted

from the flooding of plaintiff's lands on June 21 and 22, 1947, when intersecting floodwaters backed up, completely inundating plaintiff's lands except for a few knolls, which waters failed to escape for several days thereafter.

Admittedly defendant, a public corporation, owned and operated an irrigation canal along the south line of the northeast quarter of Section 8 and extending on eastward along the south line of the 60-acre tract contractually purchased by plaintiff from defendant. In other words, the south side of the 60-acre tract is adjacent to defendant's canal and at about the center thereof defendant had constructed and maintained a 42-inch corrugated drain pipe under its canal for the purpose of draining away all intersecting waters flowing down the Stump Ditch and Spring Creek drainage area from the north and west. Spring Creek is a natural drainway about 5 feet deep and 200 feet wide into which overflow waters from Stump Ditch have been diverted. They drain about 30,000 acres of land, extending over an area of some 20 to 30 miles north and west of the point where Spring Creek was intercepted by defendant's canal. The 42-inch drain has a capacity of only 9.62 square feet which was both factually and as a matter of law inadequate to drain all intersecting waters that might be reasonably anticipated to drain through it. In that regard, such drain is now substantially in the identical condition that it was on January 31, 1947, when this court in Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889, held that it was not adequate to permit the passage of all waters which defendant should have reasonably anticipated might drain through it, and that defendant was negligent in the construction and maintenance thereof because it violated the rule that: "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably

anticipated to drain there. This is a continuing duty."

In such case we specifically held that Faught, plaintiff therein, was entitled to a mandatory injunction requiring defendant to increase the carrying capacity of such 42-inch drain under its canal to an extent sufficient to carry off all waters flowing down Spring Creek on said plaintiff's land. That case involved 70 acres of land immediately north of and adjacent to defendant's canal and drain thereunder. Evidently instead of increasing the carrying capacity of the 42-inch drain as ordered, defendant purchased the south 60 acres of such tract lying immediately north and adjacent to its canal and thereafter contractually sold same to plaintiff Noel Cover. The contract, exhibit No. 30, was offered and received in evidence. It provided in part: "It is further understood and agreed that the presently existing underpass structure as maintained by First Party for the purpose of conveying flood waters from Spring Creek and the drainage area as served thereby underneath its Dawson County Irrigation Canal shall be continued in its operation and maintenance as presently installed, and said Parties of the Second Part, their heirs, personal representatives, grantees or assigns hereby waive all claim or claims for damages to said lands, crops, or other personal property thereon from flood waters flowing upon or across said lands, or accumulated thereon from said drainage area, and agree to save First Party harmless by reason thereof, and said covenant of waiver of damages shall be included in the deed of conveyance from First Party and shall be considered as running with said lands."

In the light thereof, defendant argued, and the trial court sustained its contention, that plaintiff Cover in his own right was thereby precluded from recovering anything as damages to personal property by flood waters not only upon the 60-acre tract so purchased, but also upon all other contiguous and adjoining lands owned by plaintiff. That contention has no merit. Con-

trary to defendant's contention, the 60-acre tract was the servient estate and defendant's canal was the dominant estate. In other words, plaintiff's other lands upon which the personal property here involved was all located were not either the servient or dominant estate.

In that regard, a comparable situation was presented in Webb v. Platte Valley Public Power & Irr. Dist., 146 Neb. 61, 18 N. W. 2d 563, wherein this court held: "After an easement to drain across the lands of another has been legally acquired it is limited both as to extent and nature to the terms of the original grant."

In County of Johnson v. Weber, 160 Neb. 432, 70 N. W. 2d 440, this court said: "The rule is that if the grant of an easement or reservation is specific in its terms, it is decisive of the limits of the easement. 28 C. J. S., Easements, § 75, p. 752; 17 Am. Jur., Easements, § 97, p. 995."

Also, in Mason v. Mason, 156 Neb. 478, 56 N. W. 2d 614, this court reaffirmed that: "A written contract which is couched in clear and unambiguous language is not subject to a construction other and different from that which flows from the language used."

In Stadler v. Missouri River Power Co., 139 F. 305, involving a comparable situation, the court concluded that in the absence of a clearly expressed intention to contract for other right, a reservation from a grant is limited to some part of the estate owned by the grantor and which would otherwise pass by the grant. With regard to a provision comparable with that at bar, the court held that "such provision extended no further than the reservation, and did not release defendant from damages for flooding other lands owned by plaintiffs, not described or mentioned."

In Thomas v. Greenville-Carolina Power Co., 105 S. C. 268, 89 S. E. 552, the court concluded that "where the right granted is specifically defined, and is limited in express terms, as it is in this case, to the flowage of the land described, and immunity from liability for

damage to that land, it cannot be presumed that the parties intended that it should have any greater extent in its operation than that expressed."

We conclude that the language of such contract here involved clearly and unambiguously limited defendant's right to flood only the 60-acre tract, and waived damages therefor to only that tract and personal property located thereon. Therefore, it was proper to receive exhibit No. 30 in evidence exclusively for the consideration of the trial court in order to determine its scope as a matter of law, but it was improper and erroneous to read or submit same as evidence to the jury for any purpose. It follows that the trial court erred prejudicially in holding as a matter of law that plaintiff in his own right was precluded by exhibit No. 30 from claiming any damages to personal property located on his other lands, to wit: The northeast quarter of Section 8 and the north 100 acres of the northwest quarter of Section 9. In that connection also, instruction No. 10 given by the trial court, which informed the jury that "the Court has taken from the jury any consideration of any damages that the plaintiff, Noel Cover, has sustained in his own right because of said flood" was entirely erroneous and prejudicial. Contrary to defendant's contention, it was not, under the circumstances presented here, only an error relating to the measure of recovery which could be error without prejudice. As hereinafter observed, the issue of defendant's negligence and its defense of act of God were not properly submitted to the jury.

In Johnson v. Marsh, 146 Neb. 257, 19 N. W. 2d 366, this court, citing and quoting from other authorities, reaffirmed that: "Where cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judg-

ments in the former action." As stated in the opinion: " '* * * These are exceptions to the general rule warranted from the necessity of giving effect to former holdings which finally decide questions of fact and law.' "

In the light of such rule plaintiff argued that the trial court erred prejudicially in refusing to examine its own records and take judicial notice of its own proceedings, and the judgments rendered by that court and this court on appeal in Faught v. Platte Valley Public Power & Irr. Dist., *supra,* an interwoven and interdependent case in which defendant was a party. We sustain that contention. In such case not only the same trial court, but also this court on appeal, held that the very same 42-inch drain here involved was inadequate and that defendant was negligent in constructing and maintaining same. That question has been finally decided and could not properly be again submitted to a jury for it to determine whether or not the trial court and this court were correct in making such a decision. Therefore, the trial court erred prejudicially in failing and refusing to instruct the jury as a matter of law that defendant was negligent as alleged by plaintiff. To hold otherwise would be a travesty upon justice and permit a trifling with judgments duly rendered according to law. On the other hand, as a matter of course, the trial court should have told the jury that the burden was upon plaintiff to prove by a preponderance of the evidence that plaintiff's damages were proximately caused by such negligence of defendant, and the amount of plaintiff's damages.

The defense was primarily predicated upon the contention that the sole proximate cause of plaintiff's damages was an act of God for which it was not liable. This court has decided that in order for a flood to come within the term "act of God" it must have been so unusual and extraordinary a manifestation of nature as could not under normal conditions have been reasonably anticipated or expected. In that connection, we have

concluded that although a rainfall may be more than ordinary, yet, if it be such as has occasionally occurred at irregular intervals, it is to be presumed that it may occur again; and a party engaged in public work the construction of which involves the change or restraint of the flow of surface waters in a natural drainway, is negligent if such party fails to make reasonable provision for the consequences that will result from such extraordinary rainfalls as experience shows are likely to occur. We have also concluded that an act of God does not necessarily mean an operation of natural forces so violent and unexpected that no human foresight or skill could possibly have prevented its effect. It is enough that the flooding should be such as human foresight could not be reasonably expected to anticipate and whether it comes within this description is ordinarily a question of fact. Webb v. Platte Valley Public Power & Irr. Dist., *supra;* Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557.

Contrary to plaintiff's contention, we conclude that the evidence was generally conflicting and that there was ample competent evidence which required submission of the defense of act of God to the jury. To set forth such evidence here in detail would but unduly prolong this opinion. In that regard, plaintiff argued that the trial court erred in admitting, over objections, the testimony of several of defendant's witnesses with regard to the amount of rainfall and the flood conditions existing on June 21 and 22, 1947, at points allegedly remote and outside the Stump Ditch and Spring Creek drainage area, without laying a foundation sufficient to show that it had any pertinent relation thereto.

In such respect, defendant was permitted to introduce evidence of the amount of rainfall and flood conditions on June 21 and 22, 1947, continuously as far west as Gothenburg, some 11 miles from plaintiff's lands, and continuously from there to Lexington, some 13 miles east of plaintiff's lands, and to show the read-

ings of the river gauges in the north and south channels of the Platte River immediately south of Cozad, which was about 1 mile west of plaintiff's lands. In other words, defendant was permitted to adduce evidence that the amount of rainfall and flood conditions were generally about the same over all such territory. Defendant was also permitted to adduce evidence that such floodwaters were flowing from one drainage area or watershed over into others, including the Stump Ditch and Spring Creek area; that highway bridges, and other irrigation canals as well as that of defendant, were washed out; and that city property and farm lands in the area from Gothenburg to Lexington were generally covered with water. Under the circumstances presented here, such evidence was not too remote as a matter of law, and its admission was largely within the discretion of the trial court. We conclude that it did not abuse its discretion. To have confined such evidence to the amount of rainfall and flood conditions entirely within the Stump Ditch and Spring Creek drainage area would have been too restrictive.

Exhibit No. 55 was an isohyetal map which showed the storm centers and amount of rainfall from June 18 through June 22, 1947, generally throughout adjoining states, including Wyoming, South Dakota, and Nebraska. Such exhibit was erroneously admitted in evidence because too remote, but by order of the trial court it was never exhibited to the jury so its admission as such was not prejudicial to plaintiff. In that regard, such part of exhibit No. 55 as officially and properly disclosed the amount of rainfall in the northwest upper reaches of the Stump Ditch and Spring Creek drainage area was separately admissible and it was properly presented to the jury by oral testimony relating thereto.

Plaintiff argued that the trial court erred in giving instructions Nos. 7 and 11, and erred in failing to give his requested instruction No. 3 or to in any other correctly equivalent manner instruct upon plaintiff's theory

of the case with relation to an act of God. We sustain plaintiff's contentions in the manner hereinafter set forth. Instruction No. 7 given by the trial court first told the jury that defendant in its answer had alleged as an affirmative defense that plaintiff's damages had been caused by an act of God. The instruction then read: "You are instructed that the burden of proof is upon the Defendant to establish that said storm was an 'Act of God', and if you find from a preponderance of all of the evidence in this case that the storm which caused the damages complained of by the Plaintiff was of such proportions that the same was an 'Act of God', then you are instructed that your verdict should be for the Defendant." It will be noted that the court therein not only erroneously assumed as a fact that it was "the storm which caused the damages complained of by the Plaintiff" but it also erroneously omitted a required material element, the absence of which would not entitle the jury to find for defendant. It erroneously failed to instruct the jury that the burden was upon defendant to prove by a preponderance of the evidence not only that the storm alleged by defendant to have caused the damages about which plaintiff complained was an act of God as thereafter defined, but also that such act of God was the sole proximate cause of plaintiff's damages. The rule generally is that the burden is upon defendant to prove by a preponderance of the evidence not only that the storm was of such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been reasonably anticipated or expected, but also that the flood was of sufficient force to have been the sole proximate cause of the damages about which plaintiff complained without the negligent participation of defendant. In other words, that plaintiff's alleged damages would have resulted to plaintiff even though the drain pipe had been properly constructed and maintained. Snyder v. Farmers Irr. Dist., *supra*.

In Matousek v. Galligan, 104 Neb. 731, 178 N. W. 510, 12 A. L. R. 1270, this court concluded that an act of God must be the sole proximate cause of the damages about which plaintiff complained without the negligent participation of defendant, and in order for defendant to recover a verdict he has the burden of proving such an alleged defense by a preponderance of the evidence.

In City of McCook v. McAdams, on rehearing, 76 Neb. 11, 114 N. W. 596, speaking of the defense of act of God and defendant's burden of proof with relation thereto, this court said: "The burden did not rest upon it to disprove negligence, but upon the plaintiff to prove it, but, negligence being proved against it, it did have the burden of showing an independent cause for the injury, by reason of which it was released from liability."

In Clark v. Cedar County, 118 Neb. 465, 225 N. W. 235, this court said: "Where an instruction assumes to define the whole law of the case, and omits a material element from the definition given, it is reversible error, which may be relied upon, although no proper instruction has been requested by the party seeking to take advantage of the defect. City of South Omaha v. Hagar, 66 Neb. 803."

Instruction No. 11 given by the trial court correctly defined an act of God and properly stated the rule with relation to defendant's burden of proof if it had first told the jury that defendant was guilty of negligence as a matter of law, as heretofore discussed and decided. However, instruction No. 7 was also erroneous as in conflict with instruction No. 11.

As recently as Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265, this court reaffirmed that: "An instruction which conflicts with the propositions of law properly and correctly stated in another instruction in the same charge on a vital issue of fact and tends to mislead or

confuse the jury in deliberating on conflicting evidence is erroneous and prejudicial."

Further, in refusing to give plaintiff's requested instruction No. 3 or a correct equivalent thereof on its own motion, the trial court failed and refused to instruct the jury in any manner with regard to plaintiff's theory of the case with relation to the defense of act of God. In other words, the trial court erroneously failed and refused to instruct the jury in effect that if it found from the evidence that defendant's negligence proximately contributed to cause the damages about which plaintiff complained, even though combined with or in conjunction with an act of God, that its verdict should be for plaintiff for such an amount as they found his damages to be.

In Dunlap v. Welch, 152 Neb. 459, 41 N. W. 2d 384, this court said: "The trial court, even in the absence of a request to do so, is obliged to instruct fully on plaintiff's theory of the case." In that respect, as held in Harsche v. Czyz, *supra*, "It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence. A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleadings and evidence, and a failure to do so is prejudicial."

Defendant argued that the instructions given aforesaid were favorable to plaintiff and in that regard has called our attention to the opinion of this court in Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500, and paragraph 3 of the syllabus in which we held: "In an action for damages for the flooding of lands where it appears that the flooding was caused in part by an act of God and in part by negligence the party guilty of negligence may be held only for that part which resulted from the negligence." Instruction No. 8 given in that case and approved by this court in our opinion complied with the rules heretofore set forth in every respect. In the opinion we said: "The effect of the fifth

assignment of error is to say that the court erred by failure to require plaintiff to allocate the damages sustained by him as a result of the negligence of defendant and those not sustained thereby.

"This contention appears to be without merit." We now conclude that there was no issue presented therein requiring us to formulate a rule such as that stated in paragraph 3 of the syllabus. Its promulgation therein was evidently occasioned by dictum appearing in the opinion as a quotation from defendant's brief, which we seemingly approved but refused to apply. We have now concluded that the rule as stated in paragraph 3 of the syllabus of Gable v. Pathfinder Irr. Dist., *supra,* and so much of that opinion as seemingly approved same, was erroneous and same is hereby overruled and withdrawn.

The following authorities support that conclusion and are controlling in this jurisdiction. In Republican Valley R. R. Co. v. Fink, 18 Neb. 89, 24 N. W. 691, this court, citing authorities, said: "A loss occasioned by the act of God has reference to acts with which the agency of man has nothing to do. * * * If the loss or injury happen in any way through the agency of man, it cannot be considered the act of God."

In Amend v. Lincoln & Northwestern R. R. Co., 91 Neb. 1, 135 N. W. 235, this court said: "As stated by the decisions and authorities, if by any act of man in conjunction with the act of nature an injury is inflicted, he will be held to respond for the injury suffered. In 1 Cyc. 758, it is said that the act of God 'may be defined to be any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains or care, reasonably to have been expected, could have been prevented'—citing cases in note. 1 Words and Phrases, 118." Such case was cited with approval by this court as recently as Snyder v. Farmers Irr. Dist., *supra.*

Also, in Davis v. Union P. R. R. Co., 99 Neb. 769,

157 N. W. 964, this court held: "In a suit for damages for personal injuries, an act of God is no defense if defendant's negligence was a concurrent cause of plaintiff's injuries." In the opinion this court said: "The rule is that an act of God is no defense if defendant's negligence was a concurrent cause of the injury. Amend v. Lincoln & N. W. R. Co., 91 Neb. 1. In 1 Shearman and Redfield, Negligence (6th ed.) sec. 39, it is said:

" 'It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the "act of God" or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. * * * But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury.' "

Finally, in Inland Power & Light Co. v. Grieger, 91 F. 2d 811, 112 A. L. R. 1075, a leading authority citing many cases designated as "the overwhelming weight of authority" the court concluded that where an act of God and the negligence of defendant concur in proximately causing damages, the defendant is liable as though the damage had been caused by his negligence alone.

For reasons heretofore stated, the judgment of the trial court should be and hereby is reversed and the cause is remanded for new trial in conformity with this opinion. All costs are taxed to defendant.

REVERSED AND REMANDED.