NOEL COVER, APPELLANT, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, A PUBLIC CORPORATION, APPELLEE.

95 N. W. 2d 117

Filed February 13, 1959. No. 34465.

*Baskins & Baskins,* for appellant.

*Crosby & Nielsen* and *Stewart & Stewart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages occasioned by floodwaters. It is the second appeal. In Cover v. Platte Valley Public Power & Irr. Dist., 162 Neb. 146, 75 N. W. 2d 661, we reversed a judgment for the defendant and remanded the cause for a new trial. The cause was tried a second time. It resulted in a verdict and judgment for the defendant. Plaintiff appeals.

We reverse the judgment of the trial court and remand the cause with directions for a retrial limited to the issue of plaintiff's damages.

Plaintiff here assigns and argues as prejudicial error remarks of the trial judge in the presence of the jury; the admission of opinion and conclusion evidence of witnesses; the overruling of plaintiff's motion for a directed verdict on all issues save that of the amount of damages; that the verdict is the result of passion and prejudice and the disregard of material evidence; in certain instructions given; and the taxing of costs.

We find it necessary to determine only the assigned errors for the failure to direct a verdict and to the taxing of costs.

We refer to our former opinion in this case for a statement of the issues and the general factual situation which produced this litigation. The opinion cites certain antecedent litigation involving the same matters in part. We do not deem it necessary to repeat those matters here.

We held on the previous appeal that the 42-inch drain, which defendant placed under its canal for the passage of the waters that might be reasonably anticipated to drain through it, was factually and as a matter of law inadequate, and that the defendant was negligent in the construction and maintenance of it. The evidence here does not appear to be different than that recited in the former opinion. It is not contended that it is. It is sufficient here to point out that the cross-section square-foot capacity of the 42-inch drain was 9.62 square feet. The evidence here also is that the cross-section square-foot capacity of Spring Creek from bank to bank immediately to the north of defendant's structure is shown to be 212½ square feet and at a distance of 300 feet below defendant's canal it is 213 square feet. So we start here with the negligence of defendant in the construction and maintenance of the drain determined as a matter of law.

The defendant here relies on an act of God as a defense.

We held in the former opinion that: "An act of God must be the sole proximate cause of damages about which plaintiff complained without concurrent negligent participation of defendant, and in order for defendant to recover a verdict, he has the burden of proving such an alleged defense by a preponderance of the evidence."

It is patent that evidence of an act of God is not alone sufficient to constitute a defense. The defendant must prove in addition thereto that the act of God was the sole proximate cause of the damages about which plaintiff complains and that it is free from concurrent negligent participation in the proximate cause.

The defendant here advances the contention that we determined the question of the sufficiency of the evidence in the previous opinion. It does not cite the rule, now followed, as stated in Callahan v. Prewitt, on rehearing, 143 Neb. 793, 13 N. W. 2d 660: "* * * where on appeal findings of fact are made which become the law of the case and there is a remand for a new trial, on such retrial, such findings are binding on the parties, the trial court and this court, unless on the retrial the facts relating to the issues upon which the findings were made are materially and substantially different from those adduced on the former trial, and that the burden of showing a difference shall rest upon the party making the claim."

We held that at the first trial there was ample competent evidence requiring the submission of the defense of an act of God to the jury. Our holding did not go to the precise question here of that act being the sole proximate cause. It does not appear from the opinion that such a question was submitted to the trial court nor to this court.

An examination of the former opinion reveals clearly that after we had determined that the evidence was sufficient to require submission of the defense of an act of God to the jury we thereafter determined that the trial

court failed to properly submit the issue that the act of God was the sole proximate cause of plaintiff's damage. We neither discussed nor decided the sufficiency of the evidence to go to the jury on that matter. It accordingly is a subject for review here.

We start here with the accepted fact that there was ample competent evidence which required submission of the defense of an act of God to the jury. We recognize that plaintiff challenges the admissibility of certain parts of that evidence. As we view the case it is not necessary to determine that assignment.

We go to the question of whether or not there was ample evidence to take to the jury the question of whether the act of God was the sole proximate cause of plaintiff's damages.

We give the defendant the benefit of the rule that all questions of fact and all inferences reasonably deducible therefrom must be resolved in defendant's favor.

There are parts of two quarter sections of land here involved. The sheep pens where the alleged damage occurred are on the west quarter section. The quarter sections are separated by a county road. Spring Creek meanders generally north and south through the east quarter section. To the north of the two pieces of land is a county road running east and west. The two pieces of land are bordered on the south by defendant's canal.

The siphon under defendant's canal runs from the lowest point in the bed of Spring Creek. It opens into the bed of Spring Creek in a ditch made by defendant, and after about 300 feet enters the natural bed of the stream where it flows ultimately to the river to the south. The elevations of the two pieces of land, of Spring Creek, and the siphon are in evidence and without dispute.

The flow level (the bottom of the siphon) at its north end is at an elevation of 2,474 plus feet. The bottom elevation of Spring Creek at that point is shown to be 2,473 plus feet. The bottom of Spring Creek at a distance

of 300 feet south of the canal where the cross-section measurement was taken is shown to be 2,473 plus feet.

The elevation of the banks of the bed of Spring Creek above the defendant's canal is shown to be 2,478 plus feet on the west and 2,479 plus feet on the east.

The elevation of the north bank of the defendant's canal is shown to be 2,483 plus feet above the siphon.

The elevation of the land to the east of Spring Creek and contiguous to defendant's canal is shown to be 2,480 plus feet.

The elevation of the county road between the two pieces of land and opposite the sheep pens is shown to be 2,484 feet and 2,481 feet at the south, with two exceptions. At a place about half way down from the north and again nearer the south end of the pens, the elevation of the road is shown to be between 2,480 and 2,481 feet. These constitute the swales to which witnesses referred.

Parts of two sheep pens at the southeast end of the yards are shown to have been on ground with an elevation of 2,480 to 2,481 feet. The remainder of plaintiff's lands is shown to have been at elevations of 2,481 feet sloping upward to 2,485 feet at the northwest corner of the area where pens were located. It may be stated that these elevations were made by a survey had in 1950, over 2 years after the flood here involved. There is no contention that they do not reflect the elevations as they existed in June 1947 when the flood occurred.

From this evidence it appears certain that waters coming down Spring Creek would escape through the siphon to the extent it permitted, and that the excess would be held back first in the natural channel of Spring Creek and then pond in the area north of the canal of defendant. The depth of that ponding would increase so long as waters came down Spring Creek in excess of the flow-out of the siphon and until some other outlet appeared or the excess flowage stopped. It is undisputed that on the morning of June 22, 1947, after the rainfall

had largely ceased, the water from the ponded area was running east along the north bank of defendant's canal. The conclusion is inescapable that the ponded water to the north of defendant's canal was then more than 5 feet above the flow line of the siphon and more than 2½ feet above the top of the siphon.

The evidence is without dispute that there was no substantial ponding of water south of defendant's canal at any time.

The evidence is also without dispute that on the morning of June 22, 1947, largely the whole area of the east piece of land was under water.

It is also in evidence without dispute that on that morning water began to flow upon plaintiff's land and the water came from the southeast and east, entering first across the two swales of the road above mentioned. To reach plaintiff's land where two pens were located that water had to be in excess of 5 feet above the flow line of the siphon, and to reach the remaining lands that were flooded it had to be in excess of 6 feet above the flow line of the siphon.

It is also undisputed that the natural drop of the level of Spring Creek from the county road to the north to defendant's canal was about 5 feet. It is in evidence by an expert witness for plaintiff and an expert witness for defendant that the main channel of floodwaters follows the thread of the stream and works its way by slower degrees to the flood plane areas on either side. This evidence points to the conclusion that the flow of the water onto plaintiff's lands was compelled by the elevation of the water in the ponded area.

This conclusion is fortified by the testimony of witnesses for the plaintiff that on the morning of June 22, 1947, water was flowing south along the north and south roadway and commingling at one of the swales with waters coming in from the east and southeast. That is the only evidence that we find in this record that any direct flow floodwaters reached plaintiff's land

without having first become a part of the waters in the ponded area above defendant's canal.

We are here mindful of the conclusion of the expert witness for the defendant that direct flow floodwaters of necessity must have reached plaintiff's land. Were it so, it would be but a part of the waters that caused plaintiff's alleged damage. However, that opinion has no foundation in fact upon which it can be based.

The rule is: "The value of the opinion of an expert witness is dependent on and is no stronger than the facts on which it is predicated. The opinion has no probative force unless the assumptions upon which it is based are shown to be true." Pueppka v. Iowa Mutual Ins. Co., 165 Neb. 781, 87 N. W. 2d 410.

The expert witness based his conclusion on the testimony of a witness for the plaintiff that on the morning of June 22, 1947, the water was from 1½ to 2 feet above the east and west roadway where it intersected with the north and south road at the northwest corner of the east piece of land here involved, and that the road east from that point was under water for a little way east of the Spring Creek canal. He added the depth of the water at that point to the elevation of the *railroad spur* at that point as shown by the 1950 survey. He thereby reached an elevation figure 4 feet above the elevation of the bank of defendant's canal, and concluded that the canal did not have any influence on the backing of water under those conditions. He did not conclude that it would be a direct flow onto plaintiff's lands. He said the water would continue to run southward. Obviously that would put it running into the ponded area.

The fault with this conclusion is this: The flood occurred in 1947. The elevation of the roadway was determined as it existed in 1950. It is in evidence, without dispute, that the road was elevated and the borrow pits lowered in 1948. We find no evidence as to the elevation of that roadway at the time of the flood. It of necessity follows that his conclusion based on a fact

figure as to the elevation of the road, not shown to be true, has no probative force.

We are also mindful of the testimony of defendant's expert witness given in answer to a hypothetical question. His conclusion was that the "underpass structure" of defendant's canal did not have any effect on the flood damages claimed by the plaintiff. This witness had testified as to the extent of the rainfall in the drainage area of Spring Creek; to the rainfall to the west and east of the area involved; to the increased high water level in the Platte River following the storm as shown by the gauges south of Cozad; and to the increased discharge of waters in the river.

The witness was specifically referred to that evidence as a foundation for his expert opinion. Obviously that evidence could have a bearing on the question of whether the storm constituted an act of God. It had no bearing on the question of whether plaintiff's damages were in part caused by the ponding of the waters north of defendant's canal to a height sufficient to cause those ponded waters to flood plaintiff's lands.

Under the rule last above cited the evidence has no probative force on the question here being determined.

This conclusion is reinforced by the testimony of this witness on cross-examination. He testified that none of the water in the river ever reached the plaintiff's lands; and that the underpass was insufficient "to take care of the drainage water that came down there." He admitted that if there had been a larger structure opening under the canal the water would "get away * * * faster," and that would be "the only effect it would have." Here then is testimony by defendant's witness that the small and inadequate opening caused the ponded water to remain north of the canal a longer time than it would have done had an adequate structure been provided. Here it is to be remembered that plaintiff's claim of damages rests not alone on the flooding, but on the fact that the floodwaters remained

in his pens for a period of 3 days or more with the consequent losses based on inability to feed and care for his sheep during that time.

The witness' evidence is that the term "stabilized condition of a watercourse" means that time when the surface of a stream and the bed of the stream are parallel. Or stated otherwise, it means that time when the inflow and outflow are equal. On that basis the witness appears to conclude that when the water reached a stabilized condition the structure of the defendant would have no effect because the inflow and the outflow would be equal. This conclusion ignores the obvious fact that the stabilized condition was not had until the ponded water reached a level sufficiently high so as to permit the water passing through the siphon and to the east along the north side of defendant's canal to equal the floodwaters coming from the north. The height of the ponded water before and when that stabilized condition was reached would, and obviously did, cause the waters to flow westward upon plaintiff's lands. It is the height of the water, whether stabilized or not, that is the important fact question here.

The basis of the witness' opinion also ignores the obvious fact that had there been an adequate outlet under defendant's canal, the stabilized condition would have been reached at a lower level; that there would have been less or no flooding of plaintiff's land; and that any waters reaching plaintiff's land would have receded more quickly.

We deem the conclusion inescapable that the evidence is wholly insufficient to sustain a jury's verdict that the sole proximate cause of plaintiff's damage was an act of God.

In Pueppka v. Iowa Mutual Ins. Co., *supra,* we held: "The trial court should direct and this court should set aside a verdict if the evidence is undisputed or if the evidence, though conflicting, is so conclusive that it is insufficient to justify a verdict or sustain a judgment."

Accordingly we hold that the trial court erred in not sustaining plaintiff's motion for a directed verdict leaving only the issue of the amount of plaintiff's damage, if any, to be submitted to the jury. The judgment of the trial court is reversed and the cause remanded for a new trial limited to the issue of plaintiff's alleged damages.

One other matter requires attention. In our previous decision reversing the judgment and remanding the cause we determined that: "All costs are taxed to defendant." The trial court in its judgment in this action taxed costs to the plaintiff in the sum of $1,067.56. Plaintiff in his brief asserts that this included all costs in the trial court up to the time of the first appeal and the costs of the first appeal.

The defendant by brief concedes the contention to be true and states that it is a matter for the district court and upon a motion for retaxing costs being filed, same should be retaxed according to the mandate of this court.

Error being conceded, we direct that the costs be retaxed according to the mandate. We point out that a determination that "all costs are taxed" to a party means only the costs of the appeal to this court. The direction does not include costs in the trial court save in those situations where, by appropriate language, the trial court costs as well as the appeal costs are taxed in our order.

All costs of this appeal are likewise taxed to the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.