Gordon DEMPSEY and Genevieve Dempsey, Plaintiffs-Appellees,

v.

CITY OF SOURIS, Defendant-Appellant.

Civ. No. 9569.

Supreme Court of North Dakota.

May 22, 1979.

Benson & Schell, Bottineau, for defendant and appellant; submitted on brief.

Pringle & Herigstad, Minot, for plaintiffs and appellees; argued by Thomas A. Wentz, Minot.

PAULSON, Justice.

The City of Souris has appealed to this court from the judgment of the Bottineau County District Court[1] which held that the operation of a sewage lagoon by the City of Souris ["City"] constituted a nuisance and had damaged the plaintiffs, Gordon Dempsey and Genevieve Dempsey ["the Dempseys"], in the amount of $11,860.00. The City contends that it is not liable for damages caused by the operation of the lagoon because the damages were proximately caused by an act of God, i. e., excessive rainfall and runoff. Alternatively, the City asserts that, if it is liable for damages, the damages awarded by the district court are excessive. We affirm.

In 1956 the City constructed a sewage lagoon on land adjacent to land owned by the Dempseys. The lagoon contains an overflow structure that is used to regulate the fluid level in the lagoon and the rate of discharge. Sewage overflow is discharged from the lagoon into a ditch which eventually leads onto the Dempseys' farm land.

At various times since the sewage lagoon began operating, sewage effluent has overflowed onto the Dempseys' land. On many occasions the overflow consisted of untreated or improperly treated raw sewage.

During the late 1960's and 1970's, the overflow problems increased in severity. In 1974, the City obtained a permit from the State Health Department to discharge adequately treated sewage; overflow was discharged during the years 1974, 1975, and 1976; and in 1976, the State Health Department cited the City for operating the lagoon in violation of its discharge permit. The City obtained special permission to discharge inadequately treated sewage in July of 1976.

The Dempseys presented testimony at the trial to show that the productivity of the tract of their land adjacent to the overflow ditch had been adversely affected by the presence of improperly treated sewage effluent upon the land, and that the land had been permanently damaged. The Dempseys also presented testimony that the sewage overflow had at times extended to within approximately fifty feet of their house; that the raw sewage had permeated the air with an extremely offensive odor and had decreased their use and enjoyment of the property; and that the odor had decreased the fair market value of their property.

The City introduced evidence, including the results of soil tests, to show that the Dempseys' land had not been damaged by sewage overflow. Testimony was also presented to show that the rainfall in Bottineau County was excessive during many of the years between 1969 and 1976, and that the excessive moisture was the proximate cause of the damages, if any, to the Dempseys' land.

The district court found that the following factors had contributed to cause harm to the Dempseys:

"1) Excessive moisture both in the form of spring runoff and rainfall over the period from 1971 to the present, with the associated effects of this upon cropland.

2) Discharge of untreated sewage onto the surface which collected in the area around the lagoon, along the ditches of the railroad track and roadway. Some of this discharge evaporated leaving deposits of solids on the surface, with some of it seeping into the ground thus increasing the dissolved salts, residue from detergents, soaps and other sewage contaminants in the surface and ground water in this area.

3) Flooding from excessive runoff and rainfall filling this same area where the overflow from the lagoon collected, and in turn further spreading the deposited solids, and the dissolved salts and residue over the area of plaintiffs' cropland both to the north and south.

---

1. The district judge presided over the trial without a jury.

4) The combination of these factors reducing the productivity and fertility of the soil in the areas where this condition was more concentrated, thus causing only weeds to grow if uncropped or a very poor or non-existent stand where cropping the land was attempted."

The district court held that the operation of the sewage lagoon by the City of Souris constituted a nuisance pursuant to § 42–01–01 of the North Dakota Century Code; that the Dempseys had failed to prove permanent damage to their land; that as a result of the operation of the lagoon, the Dempseys had suffered crop damage from 1970 through 1976 in the amount of $6,860.00; and that the Dempseys had suffered damages for personal discomfort and annoyance caused by the stench and odor emanating from the City's sewage lagoon in the amount of $5,000.00. In addition to awarding the Dempseys a total of $11,860.00 in damages, plus interest from the date of judgment, the district court permanently enjoined the City of Souris from discharging untreated effluent from its sewage lagoon.

On appeal the City raised the following issues:

1. Is the City of Souris not liable to the Dempseys because the damage was proximately caused by an act of God, i. e., excessive rainfall and runoff?
2. If the City of Souris is liable to the Dempseys for damages caused by its operation of the sewage lagoon, were the damages awarded by the trial court excessive?

The City, in its appellate brief, conceded that a nuisance may have been created by its operation of the sewage lagoon. However, the City contends that any damage to the Dempseys' property was proximately caused by the unforeseeable natural conditions of excessive rainfall, runoff, and flooding. The City further contends that it is not liable for damages caused by such unforeseeable acts of God.

In *Northwestern Bell Tel. Co. v. Henry Carlson Co.*, 83 S.D. 664, 165 N.W.2d 346, 349–350 (1969), the South Dakota Supreme Court stated:

"An act of God has been defined as 'any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonably to have been expected, could have been prevented'. 1 C.J.S. Act of God p. 1423. It excludes the idea of a human agency and where the cause considered 'is found to be in part the result of the participation of man, * * * the whole occurrence is thereby humanized, * * * and removed from the operation of the rules applicable to the acts of God'. Ibid, p. 1424. If several causes concur in a loss, including an act of God, a party is not relieved from liability, *Mincey v. Dultmeier Mfg. Co.*, 223 Iowa 252, 272 N.W. 430, and to exonerate the defendant an act of God must be the sole proximate cause of the accident. *Wagaman v. Ryan* [258 Iowa 1352, 142 N.W.2d 413], supra; *Cover v. Platte Valley Public Power Irr. Dist.* [162 Neb. 146, 75 N.W.2d 661, 167 Neb. 788, 95 N.W.2d 117, 173 Neb. 751, 115 N.W.2d 133], supra."

In *Frank v. County of Mercer*, 186 N.W.2d 439, 443 (N.D.1971), which involved a heavy rainstorm and flood, this court stated:

"In defining an act of God as being an extraordinary or unprecedented act, this court held, in *Soules v. Northern Pac. Ry. Co.*, 34 N.D. 7, 157 N.W. 823, 824 (1916), in paragraphs 6 and 7 of the syllabus:

" '6. Extraordinary or unprecedented floods are floods which are of such unusual occurrence that they could not have been foreseen by men of ordinary experience and prudence. Ordinary floods are those, the occurrence of which may be reasonably anticipated from the general experience of men residing in the region where such floods happen.

" '7. In passing upon what is or what is not an extraordinary flood or whether it should have been anticipated and provided against, the question to be decided is: "Considering the rains of the past, the topographical and climatic conditions of

the region and the nature of the drainage basin as to the perviousness of the soil, the presence or absence of trees or herbage which would tend to increase or prevent the rapid running off of the water, would or should a reasonably prudent man have foreseen the danger and provided against it?" ' "

See *Reichert v. Northern Pac. Ry. Co.,* 39 N.D. 114, 167 N.W. 127, 136 (1918); and *Ferderer v. Northern Pac. Ry. Co.,* 77 N.D. 169, 42 N.W.2d 216, 223 (1950).

■ The Dempseys' cause of action was based upon nuisance rather than negligence.[2] Therefore, the Dempseys were required to prove that the City had maintained a nuisance and that the nuisance was the proximate cause of the damage to their property.

■ In order to prevail in the present case using the act of God defense, the City was required to prove that the rainfall, runoff, and flooding were unprecedented and extraordinary and could not have been reasonably anticipated and provided against. *See Frank, supra; Ferderer, supra; Reichert, supra; Soules, supra;* and *Carlson, supra.* In addition, the City was required to prove that an act of God was the sole proximate cause of the damage to the Dempseys' land.[3] *See Ferderer, supra* 42 N.W.2d at 224; *Carlson, supra* 165 N.W. 2d at 349; *Cover v. Platte Valley Public Power & Irr. Dist.,* 162 Neb. 146, 75 N.W.2d 661 (1956), 167 Neb. 788, 95 N.W.2d 117 (1959); *Wagaman v. Ryan,* 258 Iowa 1352, 142 N.W.2d 413 (1966). As was stated in *National Weeklies, Inc. v. Jensen,* 183 Minn. 150, 235 N.W. 905, 906 (1931):

> "If the damage done was solely the result of an act of God, the city was not liable. If the negligence of the city approximately contributing and an act of God combined to produce the result, the city is liable."

■ The City of Souris has the burden of proving that the excessive rainfall, runoff, and flooding constituted an act of God. *Reichert, supra; Soules, supra;* and *Carlson, supra.* A court's determination of whether or not an act was an act of God is a question of fact. *Frank, supra; Ferderer, supra; Reichert, supra;* and *Soules, supra.* In addition, the determination of the proximate cause of an injury is a question of fact. *See Miller v. Trinity Medical Center,* 260 N.W.2d 4 (N.D.1977); *Dehn v. Otter Tail Power Co.,* 251 N.W.2d 404 (N.D.1977); and *Kresel v. Giese,* 231 N.W.2d 780 (N.D. 1975). Because the determinations regarding the existence of an act of God and proximate cause are questions of fact, the district court's findings on those questions are subject to the "clearly erroneous" rule of Rule 52(a) of the North Dakota Rules of Civil Procedure. *See Porter v. Porter,* 274 N.W.2d 235, 238–239 (N.D.1979); and *In re Estate of Elmer,* 210 N.W.2d 815, 819–820 (N.D.1973).

■ In the present case, the district court found that the damage to the Dempseys' land had been caused by several factors, including excessive rainfall and runoff; the discharge of untreated sewage; and flooding, which resulted from the excessive rainfall and runoff. The district court's finding that several factors had combined to cause the damage implicitly precluded a finding that an act of God had been the sole proximate cause of the damage. Because an act of God was not the sole proximate cause of the damage, the City of Souris could not successfully assert the act of God defense to avoid liability.

In addition, although the district court found that the rainfall, runoff, and flooding had been excessive, the court made no finding that the rainfall, runoff, and flooding were so extraordinary and unprecedented that they constituted an act of God. The court's findings show that the City of Sour-

---

**2.** Negligence need not be proved when the action is based upon nuisance. *Thorson v. City of Minot,* 153 N.W.2d 764, 769 (N.D.1967); and *Kinnischtzke v. City of Glen Ullin,* 79 N.D. 495, 57 N.W.2d 588, 596–597 (1953).

**3.** Although the present case does not involve negligence, the act of God must still have been the sole proximate cause of the damage in order for the defendant to avoid liability.

is failed to meet its burden of proof on the act of God issue.

From a perusal of the record we conclude that the district court's finding of fact that the damage to the Dempseys' land was caused by excessive rainfall and runoff, the discharge of untreated sewage, and flooding, was not clearly erroneous pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure. We further conclude that the City of Souris failed to show that the damage had been proximately caused by an act of God that would enable the City to avoid liability for the damage.

■ The second issue involves the City's contention that the damages awarded by the district court are excessive. The district court's determinations of the amount of the Dempseys' damages for crop loss and for the loss of the use and enjoyment of their property constitute findings of fact that must be reviewed on appeal in accordance with Rule 52(a), N.D.R.Civ.P. *See Skjonsby v. Ness*, 221 N.W.2d 70 (N.D. 1974); and *Creswell v. Guerard*, 164 N.W.2d 907 (N.D.1969).

Mr. Dempsey testified that he had sustained total crop loss on 15 to 20 acres of his land each year between 1970 and 1976. His testimony was supported by the testimony of John Norstegaard, Lawrence Counts, and Stanley Saugstad, a real estate appraiser. In addition, the trial court personally examined the cropland in question in the presence of the attorneys for both sides before the court determined that the Dempseys' crop losses resulted in damages of $6,860.00. As we stated in *Thorson, supra* 153 N.W.2d at 767:

> "There is even more reason to give the findings of the trial court credence when the issue involves damages caused by changes in the topography of the land, when the court has personally viewed the topography, making possible a clearer perspective than is attainable from a mere review of the record on appeal. In this case the transcript of the trial court proceedings discloses that the trial court in person viewed the topography of the land."

■ We conclude that the trial court's finding of fact that the Dempseys' crop loss damages equalled $6,860.00 was not clearly erroneous.

The City of Souris also contends that the district court's award of $5,000.00 damages for personal discomfort and annoyance caused by the odor emanating from the sewage lagoon was excessive. The Dempseys testified that the stench from the raw sewage was overwhelming, and that it frequently affected their enjoyment and use of their property between 1970 and 1976. The Dempseys' testimony was supported by the testimony of other witnesses. In addition, the district court found that at times the raw sewage came within one hundred and fifty feet of the Dempseys' home.

We conclude that the district court's award of $5,000.00 in damages for the personal discomfort and annoyance suffered by the Dempseys as a result of the discharge of untreated sewage from the City's lagoon was not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.

We hold that the district court did not err in determining that the operation by the City of Souris of its sewage lagoon constituted a nuisance and damaged the Dempseys in the total amount of $11,860.00.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and VANDE WALLE and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

Determining whether or not the negligent acts of the City of Souris were the proximate cause of the damage to the Dempsey land could be a question of law. The City does not make that claim but says that the "case is almost completely a factual one." The City did not challenge any of the findings of fact except in a general way, in arguing that the trial court misjudged the credibility of the witnesses. Under these circumstances, the majority opinion contains a significant amount of dicta.

I concur in the results; the judgment should be affirmed.